J. Scott Carr (SBN 136706)
*scarr@kcozlaw.com*
Joseph W. Ozmer II (SBN 316203)
*jozmer@kcozlaw.com*
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

Attorneys for Defendant
TWC Administration LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURENCE GIBBS, an individual, MATTHEW LUTACK, an individual, BRENT QUICK, an individual, and JESSICA HUENEBERG, an individual, on behalf of themselves and all others similarly situated<br><br>        Plaintiffs,<br><br><br>        v.<br><br>TWC ADMINISTRATION, LLC, a Delaware Limited Liability Company and DOES 1 through 10, inclusive<br>        Defendants. | CASE NO.: 3:17-cv-01513-DMS-AGS<br><br>Hon. Dana M. Sabraw<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[*Notice of Motion and Motion; Separate Statement of Facts; Declarations of J. Scott Carr and Tassa King filed concurrently herewith*]<br><br>Date: September 20, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 13A |

I.    INTRODUCTION .................................................................................... 1

II.   UNDISPUTED MATERIAL FACTS ...................................................... 3

    A.    Undisputed Facts Bar Plaintiffs' Meal and Rest Break Claims ............... 3

        1.    TWC Ensured Plaintiffs Had the Opportunity to Take Timely Breaks ......................................................................... 3

        2.    TWC Succeeded in its Efforts to Provide Proper Breaks ............... 5

        3.    The Evidence Cannot Support a Finding That Any Late Breaks Were Due to the Lack of an Opportunity for a Timely Break ....... 6

        4.    TWC Pays the Appropriate Premium For Late Break Violations. ................................................................................. 7

    B.    Undisputed Facts Bar Plaintiffs' Claims for Off-the-Clock Work ........... 8

        1.    TWC's Policies and Practices Expressly Prohibit Off-the-Clock Work .................................................................... 8

        2.    Plaintiffs Did Not Need to Load Programs Off the Clock ............. 9

        3.    There Was No Need to Perform Uncompensated Post-Shift Work .................................................................... 11

        4.    Plaintiffs Cannot Identify Occasions When They Worked Off the Clock and TWC Was Aware of Same, Yet Failed to Pay for It ...................................................................... 11

III.  ARGUMENT AND CITATION TO AUTHORITY ...................................... 14

    A.    Summary Judgment Standard ................................................................. 14

    B.    Plaintiffs' Rest and Meal Break Claims Fail as a Matter of Law ........... 14

        1.    TWC Was Obligated Only to Provide a Reasonable Opportunity for Proper Breaks, Not Ensure Plaintiffs Timely Took Them ................................................................... 14

        2.    TWC Provided the Opportunity for Timely Meal and Rest Breaks ......................................................................... 15

        3.    TWC's Payment of Premiums Where the Opportunity for a Timely Break Was Not Provided Defeats All of Plaintiffs' Arguments ................................................................... 17

            a)    There is No Evidence of Any Occasion Where a Plaintiff Lacked an Opportunity for a Proper Break, But Did Not Receive the Premium .................................... 17

            b)    There is No Evidence that any Plaintiff Complied with the Obligation to Report a Break Violation, But Still Did Not Receive the Premium ............................................. 18

i

C.  Plaintiffs' Claims for Unpaid Off-the-Clock Work Fail as a Matter of Law Because Plaintiffs Cannot Show TWC Suffered or Permitted Such Work ............................................................................................. 19

    1.  Plaintiffs Cannot Show Occasions Where They Worked Off the Clock .................................................................................... 19

    2.  Plaintiffs Cannot Show TWC Had Actual or Constructive Knowledge of Any Uncompensated Pre- or Post-Shift Work ..... 21

        a)  Plaintiffs' Failure to Report Specific Occasions of Uncompensated Work Despite a Policy Requiring They Do So Precludes Recovery ........................................... 21

        b)  Other Undisputed Facts Prevent Plaintiffs From Showing TWC Had Actual or Constructive Knowledge of Uncompensated Work ............................................... 22

D.  Plaintiffs' Derivative Claims Fail as a Matter of Law ........................... 24

IV.  CONCLUSION ................................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amey v. Cinemark USA Inc.*,
   No. 13-cv-05669, 2015 WL 2251504 (N.D. Cal. May 13, 2015) ........................ 18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................... 14

*Brinker Rest. Grp. v. Super. Ct.*,
   53 Cal. 4th 1004 (2012) ............................................................ *passim*

*Jasper v. C.R. England, Inc.*,
   Case No. 08–cv–5266–GW–CWX, 2012 WL 7051321 (C.D. Cal.
   Aug. 30, 2012) ......................................................................... 24

*Jones v. Spherion Staffing LLC*,
   No. LA CV11-0642 JAK, 2012 WL 3264081 (C.D. Cal. Aug. 7,
   2012) ....................................................................................... 24

*Manigo v. Time Warner Cable Inc.*,
   No. CV 16-06722-JFW, 2017 WL 5054368 (C.D. Cal. Oct. 17. 2017) ......... *passim*

*Mosley v. St. Supery Vineyards & Winery*,
   No. A137373, 2014 WL 793130 (Cal. Ct. App. Feb. 27, 2014) ........................... 16

*Ordonez v. Radio Shack, Inc.*,
   No. CV 10-7060-CAS-JCGX, 2013 WL 210223 (C.D. Cal. Jan. 17,
   2013) *("late, short, or missed" breaks are not violations absent proof
   employee lacked opportunity for compliant break)*................................. 15

*Ortiz v. CVS Caremark Corp.*,
   No. C-12-05859, 2014 WL 1117614 (N.D. Cal. Mar. 19, 2014).......................... 21

*Palazzolo v. Childrens Hosp. Los Angeles*,
   No. B216508, 2010 WL 4869755 (Cal. Ct. App. Dec. 1, 2010)...................... 18, 19

*In re Palomar Crash*,
   No. 06-CV-02711-DMS-POR, 2009 WL 10671669 (S.D. Cal. May
   19, 2009) (Sabraw, J.)................................................................ 14

*Porch v. Masterfoods, USA, Inc.*,
    685 F. Supp.2d 1058 (C.D. Cal. 2008)..................................................... 18, 19, 21, 23

*Reece v. Unitrin Auto and Home Ins. Co.*,
    No. 5:11-CV-03960 EJD, 2013 WL 245452
    (N.D. Cal. Jan. 22, 2013)..................................................... 19, 21, 22, 23

*Rodriguez v. Old Dominion Freight Line, Inc.*,
    Case No. 13–cv–891–DSF–RZX, 2013 WL 6184432 (C.D. Cal. Nov.
    27, 2013) ............................................................................................ 24

*Silva v. AvalonBay Cmtys., Inc.*,
    No. LA CV15-04157, 2016 WL 4251600 (C.D. Cal. Apr. 20, 2016) ................... 15

*Summers v. Teichert & Son, Inc.*,
    127 F.3d 1150 (9th Cir. 1997) ............................................................. 14

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007).................................................. 17

**Other Authorities**

*Fed. R. Civ. P. 56(a)* ................................................................................ 14

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.   <u>INTRODUCTION</u>

Plaintiffs concede that Defendant TWC Administration LLC ("TWC") implemented and made efforts to enforce *lawful* timekeeping and break policies that expressly prohibited off-the-clock work, and required Plaintiffs to take all of their meal and rest breaks in a timely fashion.  Nonetheless, Plaintiffs' Complaint alleges that – *in direct violation of those policies* – they spent uncompensated time before and after their shifts loading and closing computer programs, and that while they took all of their meal and rest breaks, they sometimes took them late.  Notably, however, various Plaintiffs entirely disavow all but the pre-shift off-the-clock theory, as Gibbs admits he performed no post-shift off-the-clock work, Lutack admits he has no complaints about his meal or rest breaks, and Hueneberg has never asserted any rest break violations.  To the extent Plaintiffs have not disclaimed the theories set forth in the Complaint, their claims nonetheless fail as a matter of law based on undisputed facts (primarily their own admissions) that prevent them from proving essential elements of their causes of action.

First, Plaintiffs' meal and rest break claims fail as a matter of law because overwhelming undisputed facts prove TWC provided Plaintiffs the opportunity for timely and otherwise proper meal and rest breaks, and paid Plaintiffs the appropriate meal/rest break premium on the rare occasions where they lacked such opportunity.  Among other things, Plaintiffs' own admissions establish that:

- TWC properly scheduled Plaintiffs' rest and meal breaks, scheduling the latter at least 30 minutes prior to the five-hour mark to ensure timely breaks;
- TWC used a phone system that included a feature whereby Plaintiffs could prevent additional calls from coming to them as their breaks approached;
- Plaintiffs' supervisors never told them to skip breaks, or to delay them beyond the time permitted by law;
- Supervisors were "adamant" that Plaintiffs comply with their break schedules; and
- TWC's policy is to pay the appropriate premium of one hour of additional pay if an employee lacks the opportunity for a proper break, and – in accordance with

1

that policy – all four Plaintiffs were paid meal/rest break premiums.

The record shows that TWC's efforts were successful, as *Lutack admits he had no problem taking timely meal and rest breaks,* and Hueneberg does not assert a rest break claim.  In fact, none of the Plaintiffs claim they ever missed a break (instead complaining only that they were untimely).   And, dispositively, *Plaintiffs cannot identify even a single instance when they had no opportunity for a timely break, yet TWC failed to pay the premium*.   These undisputed facts preclude Plaintiffs from proving the essential elements of their meal and rest break claims.

Second, Plaintiffs' pre- and post-shift off-the-clock work claims fail because Plaintiffs cannot show occasions where they worked off the clock, much less that TWC was aware they were doing so yet failed to compensate them for that work.  As an initial matter, and contrary to the allegations of the Complaint, undisputed facts show Plaintiffs did not even perform work off the clock "every day," either before or after their shifts. Instead, Plaintiffs' own admissions and documentary evidence show they often complied with TWC policies (and their supervisors' admonitions) forbidding off-the-clock work. Plaintiffs cannot identify specific occasions where this was not the case, and their vague, conclusory assertions are insufficient to create a genuine dispute of fact.

More importantly, even if Plaintiffs could meet their burden to show occasions where they worked off the clock, undisputed facts preclude them from meeting their burden to show that TWC had actual or constructive knowledge that such work was being performed off the clock, yet still failed to compensate them for it.  For example, all of the following facts are undisputed:

- Plaintiffs were aware that TWC's policies expressly prohibit off-the-clock work, and that *this prohibition included the very tasks at issue in this case*;
- Plaintiffs admit supervisors told them *not* to work off the clock;
- Plaintiffs knew they could be disciplined if their supervisors learned they were working off the clock (and Hueneberg was, in fact, disciplined for that offense);
- No Plaintiff nor any other employee was ever disciplined for loading programs

2

while **on the clock**, nor does doing so actually harm their performance metrics;

- To the extent (if at all) that Plaintiffs did work off the clock, they did so without their supervisor's knowledge, as they admit, *inter alia*: (1) they did not tell supervisors when they were working off the clock; and/or (2) their supervisors were not present when the off-the-clock work occurred;

- Plaintiffs admit: (1) they were supposed to inform supervisors of any off-the-clock work so their supervisor could ensure they were paid for same; and (2) **they could not identify any occasion where they informed a supervisor of uncompensated time, yet their supervisor failed to ensure they were paid for that time**.

Given such facts, Plaintiffs' conclusory and speculative assertions that supervisors were aware of any occasions of uncompensated work fails to create a genuine dispute of fact.

Accordingly, TWC respectfully requests that the Court grant TWC's Motion for Summary Judgment, dismissing all of the claims of each Plaintiff, with prejudice.[1]

## II.   UNDISPUTED MATERIAL FACTS

**A.   Undisputed Facts Bar Plaintiffs' Meal and Rest Break Claims**

The record – primarily Plaintiffs' own admissions – shows: (1) TWC implemented lawful meal and rest break policies and went to great lengths to ensure that its agents (including Plaintiffs) had the opportunity to take proper breaks; and (2) on the rare occasions where Plaintiffs lacked such opportunity, TWC paid them the appropriate break premiums.

### 1.   *TWC Ensured Plaintiffs Had the Opportunity to Take Timely Breaks*

The following undisputed facts establish that TWC implemented lawful meal and rest break policies and made every reasonable effort to ensure Plaintiffs had the *opportunity* to take proper and timely breaks:

- Plaintiffs' supervisors and managers told them they must take their meal and rest

---

[1] Plaintiffs admit their other claims are derivative of their underlying meal/rest break and off-the-clock claims and fail because the underlying claims fail. (DE 54-1 at 21, 25.)

breaks at the scheduled times, with Gibbs emphasizing that supervisors were "adamant" that call center agents take their breaks as scheduled;[2]

- No supervisor ever told Plaintiffs to skip a meal break, or delay it beyond the fifth hour of work without paying them the required premium;[3]

- In the Timekeeping Policy Acknowledgement, Plaintiffs agreed that they would take their meal and rest breaks as scheduled;[4]

- TWC properly scheduled Plaintiffs' breaks, setting the first rest break for approximately two hours into the shift, lunch no later than 4.5 hours into the shift, and a second rest break two hours after returning from lunch;[5]

- Because the average call time was 9-10 minutes, the scheduling of meal breaks 4.5 hours into the shift facilitated the opportunity for timely meal breaks;[6]

- To further facilitate timely breaks, TWC requires agents to enter the "break" or "lunch" auxiliary code ("AUX code") into the phone system as their scheduled break is approaching, which prevents further calls from coming to that agent so that he/she can take his/her break immediately after the current call ends;[7]

- TWC staggered the agents' break schedules to ensure adequate coverage of the phones and thus further facilitate compliance with the schedule;[8]

- TWC enforced its lawful meal/break policies by reminding Plaintiffs to take their breaks as scheduled, and coaching them when and if they failed to do so;[9]

---

[2] SUF ¶ 1.
[3] SUF ¶ 2.
[4] SUF ¶ 3.
[5] SUF ¶ 4.
[6] SUF ¶ 5.
[7] SUF ¶ 6.
[8] SUF ¶ 7.
[9] SUF ¶ 8.

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

- To facilitate timely breaks, or the payment of the appropriate premium absent the opportunity for a timely break, call center agents are required to inform their supervisor (or other management) if they cannot adhere to their schedule.[10]

## 2.   *TWC Succeeded in its Efforts to Provide Proper Breaks*

Undisputed facts show that TWC's substantial efforts to provide the opportunity for timely and otherwise proper breaks were quite successful, as:

- Lutack admits he has no meal or rest break claims because it was "not an issue" for him to take uninterrupted breaks as scheduled;[11]

- Hueneberg asserts no rest break claim;[12] and

- Gibbs, Quick and Hueneberg admit they took all of their meal and rest breaks, complaining only that they sometimes took them *later than scheduled*.[13]

With respect to the latter complaint, however, given the undisputed fact that TWC scheduled Plaintiffs' lunch breaks for no later than 4.5 hours into their shifts, taking a break "later than scheduled" is not evidence that there was no opportunity to take the break before the 5-hour mark, as required by law.  Moreover, Quick admitted he always had the *opportunity* to take his meal breaks between the 3.5 and 4 hour mark of his 8:00 p.m. shift because the system went down at midnight, preventing him from being on the phone at that time.[14]  Similarly, Gibbs admits he did a good job of taking breaks as scheduled, showing that he too was provided the opportunity for timely breaks.[15]  Such facts explain why Gibbs and Lutack never complained to Human

---

[10] SUF ¶ 9.

[11] SUF ¶ 10.  Lutack's unequivocal deposition testimony is confirmed by the absence of any meal or rest break allegations in the declaration he submitted in support of class certification.  (DE 54-7.)

[12] SUF ¶ 11.

[13] SUF ¶ 12.

[14] SUF ¶ 13.

[15] SUF ¶ 14.

Resources about any alleged meal or rest break violations.[16]

It is also beyond dispute that Plaintiffs' breaks complied with California law with respect to duration and relief from duty, as Gibbs and Lutack admit they were scheduled for, and always took, *more than 30 minutes for lunch every day* (typically one hour)*, and two 15-minute rest breaks, even though the law requires only 10 minute rest breaks.[17]  It is likewise undisputed that TWC ensures that breaks are uninterrupted and that no work is performed during same by requiring that they be taken off the call center floor.[18]

Finally, with respect to rest breaks, Quick and Gibbs admit they were never instructed to skip a break,[19] and that if they took a rest break later than scheduled they did so because it was not practicable or feasible to take it at the scheduled time because they were on a call.[20]  Further, as shown above, Hueneberg does not even assert a rest break claim.

**3.**  ***The Evidence Cannot Support a Finding That Any Late Breaks Were Due to the Lack of an Opportunity for a Timely Break***

Undisputed facts show that, to the extent Plaintiffs took any breaks later than contemplated by California law, it was not for lack of a reasonable opportunity to take a timely break.  Rather, Plaintiffs admit they engaged in practices where they did not always avail themselves of the opportunity TWC provided for timely breaks.

For example, Plaintiff Hueneberg admitted that call center agents would delay meal breaks of their own accord to take their breaks with others, and it is thus impossible to tell why any meal break may have commenced after the end of the fifth

---

[16] SUF ¶ 15.

[17] SUF ¶ 16.

[18] SUF ¶ 17.

[19] SUF ¶ 18.

[20] SUF ¶ 19.  As shown *infra*, while rest breaks should be scheduled for *approximately* the middle of each 4 hours of work, the law permits them to be taken later where it is impractical to take them at the that time.

hour of her shift.[21]  Similarly, Plaintiff Quick understood that it was his responsibility to take his breaks as scheduled, but he took them when he wanted to because he had freedom to do so.[22]

### 4. *TWC Pays the Appropriate Premium For Late Break Violations.*

Finally, and importantly, undisputed facts prove TWC paid Plaintiffs the required premium (one-hour of additional pay) on *every occasion* when TWC was aware Plaintiffs lacked the opportunity for a proper break.  In fact, TWC's timekeeping system *automatically* added the meal penalty if a Plaintiff did not clock out for lunch by the end of their fifth hour of work, with supervisors having the authority to remove such penalties *only* upon confirmation that the agent in fact had the opportunity for a timely break, but chose to take it later.[23]  In keeping with these policies and practices, all four Plaintiffs received meal/rest premium payments.[24]  In fact, during the limitations period, TWC made 254 premium payments to call center agents in San Diego and Ontario.[25] Given such facts, it is not surprising that ***Quick and Gibbs cannot identify even a single occasion where TWC was aware they lacked the opportunity for a proper break, yet failed to pay them the appropriate premium***.[26]  As shown below, the aforementioned undisputed facts entitle TWC to summary judgment on Plaintiffs' meal and rest break claims.

_____

[21] SUF ¶ 20.
[22] SUF ¶ 21.
[23] SUF ¶ 22.
[24] SUF ¶ 23.
[25] SUF ¶ 24.
[26] SUF ¶ 25.  ¶

**B.      Undisputed Facts Bar Plaintiffs' Claims for Off-the-Clock Work**

      **1.      *TWC's Policies and Practices Expressly Prohibit Off-the-Clock Work***

            "***Working off the clock is strictly prohibited***."[27]

This is a direct quote from TWC's longstanding timekeeping policy – *a policy each Plaintiff acknowledged in writing and/or admitted they understood*.[28]  In addition to executing a written acknowledgment of TWC's policy prohibiting off-the-clock work, Plaintiffs also admit they were trained on this policy during orientation.  Specifically, TWC presented Plaintiffs with a slide show which expressly stated that call center agents must be clocked in prior to performing any work at all, and not clock out until all work is complete.[29]  This presentation expressly informed call center agents that ***loading programs is considered working and must be done on the clock***.[30]  In keeping with this training, Plaintiffs admitted that TWC has no policy stating it will not pay for time spent loading programs, much less requiring, or even permitting, them to load or shut-down programs while off the clock.[31]

      TWC's timekeeping policies also leave no doubt that it would be a violation of TWC policy for anyone to instruct or encourage employees to work off the clock.[32] Thus, not surprisingly, ***Plaintiffs admit their supervisors explicitly instructed them not to work off the clock***.[33]  Indeed, the manager (Ron Collazo) of the San Diego call center where Plaintiffs worked sent an email to all supervisors reminding them that agents must not work off the clock "prior to their shift loading tools" – a policy that had been

---

[27] SUF ¶ 26.
[28] SUF ¶ 27.
[29] SUF ¶ 28.
[30] SUF ¶ 29.
[31] SUF ¶ 30.
[32] SUF ¶ 31.
[33] SUF ¶ 32.

"in place for over a decade."[34]  Plaintiff Hueneberg's supervisor forwarded this email to her entire team emphasizing their manager's instructions.[35]

TWC's prohibition against off-the-clock work is not only made clear by TWC's written policies and management's express instructions, it was also facilitated by the set-up of the agents' computer systems.  That is, when an agent would log into their computer, the window to log into the Avaya program agents use to clock in pops up automatically, thus inviting them to clock in immediately.[36]  Accordingly, to load programs without clocking in first, an agent has to intentionally ignore and go around the automatically generated Avaya log in window.[37]

### 2.  *Plaintiffs Did Not Need to Load Programs Off the Clock*

Given these facts, Plaintiffs cannot and do not contend that there was any *actual* requirement that they load programs off the clock, and in fact concede that it would violate TWC's policies to do so (as shown above).  Nonetheless, Plaintiffs assert they loaded programs off the clock – *in direct violation of TWC's aforementioned policies expressly forbidding off-the-clock work in general, and loading programs while clocked out in particular* – because: (1) they could not clock in prior to the scheduled start of their shift; and (2) they could not begin taking calls at the start of their shift unless and until their programs were loaded because doing so would hurt their performance metrics.[38]  Undisputed facts expose these premises as false.

First, Plaintiffs' admissions and uncontroverted documentary evidence establish that, rather than working off the clock to load programs, they were permitted to load programs *while* taking calls *after* clocking in, and could also clock in five minutes

---

[34] SUF ¶ 33.

[35] SUF ¶ 34.

[36] SUF ¶ 35.

[37] SUF ¶ 35.

[38] SUF ¶ 36.

before the start of their shift to load programs before taking calls.[39]  Indeed, Hueneberg's supervisor sent the following email telling her team they ***must not*** load programs off the clock, but could instead clock in early to do so and/or load them while taking calls:

> Greetings Team!
>
> Below is a reminder from our manager Ron Collazo about taking breaks & lunches away from your desk and off of the floor.
> ***Additionally, no working off the clock!*** (Who would want to work and not get paid for that time anyways?!) ***If you like to load your tools before your scheduled shift you are allowed to manually clock in using Kronos up to 5 minutes before your scheduled start of shift*** . . .
>
> Not to worry if you don't show up early, we don't require it!  Just make sure that you log in to Avaya at your scheduled start of shift, launch AAD & immediately begin taking calls – ***You can load additional tools as you go***.[40]

(Emphasis added.)  Hueneberg admits that, in accordance with her supervisor's instructions, she knew she was permitted to clock in five minutes early to load programs, or load them while taking calls.[41]  Similarly, Quick and Lutack understood that they could clock-in to Kronos five minutes early to load programs before taking calls.[42]  In fact, Plaintiffs' own time records confirm that TWC does ***not*** prohibit call center agents from clocking in before the start of their shifts to load programs*, as all of the Plaintiffs routinely clocked in before the start of their shift*.[43]

Second, Plaintiffs' self-serving and conclusory speculation that their performance metrics would suffer unless they worked off the clock is entirely false.

---

[39] SUF ¶ 37.
[40] SUF ¶ 38.
[41] SUF ¶ 39.
[42] SUF ¶ 40.
[43] SUF ¶ 41.

Rather, the call center's performance standards took into account time that agents would spend time loading programs while *on the clock*.[44]

Third, Plaintiffs' factually unsupported speculation that they might be disciplined if they clocked in early or loaded programs off the clock is not only non-sensical given the above, it is demonstrably false. ***There is no record of any Plaintiff (or any other agent) ever being disciplined for either clocking in five minutes early to load programs, or loading programs while taking calls on the clock***.[45]  In fact, the opposite is true, as Plaintiffs knew they could be disciplined if a supervisor caught them working off the clock,[46] and Hueneberg was disciplined for doing just that. [47]

### 3. *There Was No Need to Perform Uncompensated Post-Shift Work*

At the end of their shifts, Plaintiffs were expected and instructed to clock out as their very last activity of the day.[48]  Nonetheless, Lutack, Quick and Hueneberg (but not Gibbs) claim they spent uncompensated time at the end of their shift closing out of programs after they clocked out of the timekeeping system. Notably, however, ***Plaintiff Gibbs unequivocally admits he did not perform any work after clocking out at the end of his shift***.[49]  Obviously, Gibbs' admission confirms the absence of any requirement that agents work off the clock at the end of their shifts.

### 4. *Plaintiffs Cannot Identify Occasions When They Worked Off the Clock and TWC Was Aware of Same, Yet Failed to Pay for It*

Overwhelming undisputed facts also refute Plaintiffs' conclusory and speculative assertions that TWC knew Plaintiffs were violating TWC's unequivocal rules

---

[44] SUF ¶ 42.

[45] SUF ¶ 43.

[46] SUF ¶ 44.

[47] SUF ¶ 45.

[48] SUF ¶ 46.

[49] SUF ¶ 47.  This deposition admission is confirmed by the absence of allegations of end-of-shift off-the-clock work in his declaration in support of class certification.  (DE 54-5.)

prohibiting off-the-clock work, yet failed to pay them for that time.  First, as an initial matter, undisputed facts prove Plaintiffs did not perform work off the clock "every day," either before or after their shifts.  Rather, Plaintiffs' admissions and uncontroverted documentary evidence show they often *complied* with the aforementioned policies prohibiting such work.  For example:

- Quick was sometimes paid for time *when he had not yet even entered the facility*, as a result of his supervisor adjusting his timecard (as shown below);[50]

- Hueneberg admits she complied with her supervisor's admonitions to ***not*** work off the clock and to stay off the floor  if she was not clocked in and working;[51]

Thus, it is undisputed that Plaintiffs did ***not*** work off the clock on a daily basis.

Second, undisputed facts also preclude Plaintiffs from showing that – on the occasions (*if any*) when they did work off the clock in violation of TWC's policies and management's instructions – TWC had any reason to know Plaintiffs were working without compensation.  Plaintiffs admitted all of the following facts:

- Gibbs admits he never told his supervisors when he allegedly work off the clock;[52]

- Hueneberg and Lutack worked from home for the majority of their tenure, thus their supervisors could not have observed any off-the-clock work;[53]

- When not working from home, Hueneberg started her shift at 5:45 a.m., before her supervisor was present;[54]

- Hueneberg admitted sometimes when she was on the floor early, she would surf the web or have "gab sessions," thus giving her supervisors no reason to believe she was working merely because she was on the floor or on her computer;[55]

---

[50] SUF ¶ 48.
[51] SUF ¶ 49.
[52] SUF ¶ 50.
[53] SUF ¶ 51.
[54] SUF ¶ 52.
[55] SUF ¶ 53. .

- Even though Plaintiffs knew that working off the clock was a violation of TWC policy, and that no one could instruct them to do so, they never complained to Human Resources about any alleged off the clock work.[56]

Third, it is also undisputed that TWC provided a means for Plaintiffs to be paid for any work they performed when not clocked into the timekeeping system.  That is, TWC required its call center agents to request timecard corrections in writing from their supervisors to ensure payment for any unrecorded time.[57]  In accordance with that policy:

- Plaintiffs admit their supervisors would adjust and correct time when they were made aware of an issue that caused work to be done off the clock;[58]

- Quick admitted his supervisors went above and beyond this policy, as they adjusted his time on their own, even when he would not ask for an adjustment;[59]

- As a result of such adjustments, there were multiple instances when Quick was paid for time *before he even swiped his badge to enter the building*.[60]

Fourth, Plaintiffs' admissions establish that, to the extent (if any) they were not paid for any occasions when they worked while not clocked in, it was because they failed to comply with the above timecard adjustment rule.  For example, even though both Lutack and Gibbs knew they should submit timecard adjustments, they admit they never did so.[61]  In fact, ***Plaintiffs could not identify any occasion when they complied with the policy requiring them to request a timecard adjustment from their supervisor for any work performed off the clock, yet the supervisor failed to make that adjustment***.[62]

---

[56] SUF ¶ 54.
[57] SUF ¶ 55.
[58] SUF ¶ 56.
[59] SUF ¶ 57.
[60] SUF ¶ 58.
[61] SUF ¶ 59.
[62] SUF ¶ 60.

## III.   <u>ARGUMENT AND CITATION TO AUTHORITY</u>

**A.     Summary Judgment Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is genuine only if the evidence would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A "mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997); *see also, e.g. In re Palomar Crash*, No. 06-CV-02711-DMS-POR, 2009 WL 10671669, at *2 (S.D. Cal. May 19, 2009) (setting forth Rule 56 standard) (Sabraw, J.).

**B.     Plaintiffs' Rest and Meal Break Claims Fail as a Matter of Law**

Plaintiffs' meal and rest break claims fail as a matter of law because undisputed facts show TWC: (1) provided Plaintiffs with a reasonable opportunity to take proper breaks; and (2) paid the appropriate premium on all occasions it had reason to know that any Plaintiff did not have that opportunity.  Indeed, ***none of the Plaintiffs can provide any evidence of even a single break they lacked a reasonable opportunity to take in a timely manner where TWC failed to pay them the required premium***.

**1.     <u>*TWC Was Obligated Only to Provide a Reasonable Opportunity for Proper Breaks, Not Ensure Plaintiffs Timely Took Them*</u>**

With respect to meal breaks, black-letter California law provides that, while employers must provide employees a "reasonable opportunity to take an uninterrupted 30-minute break" and not "impede or discourage them from doing so," ***employers are not "obligated to police meal breaks and ensure no work thereafter is performed***." *Brinker Rest. Grp. v. Super. Ct.,* 53 Cal. 4th 1004, 1040 (2012) (emphasis added).  Rest breaks are also governed by a "reasonable opportunity" standard, albeit with more flexibility as to timing.  That is, "employers [have] a duty to make a good faith effort

14

to authorize and permit rest breaks in the middle of each work period, but may deviate from that preferred course where practical considerations render it infeasible." *Id.* at 1031 (noting statute requires that rest breaks occur in middle of each work period "insofar as practicable."). Accordingly, while TWC was required to provide Plaintiffs a reasonable opportunity to take timely breaks, TWC had no duty to police those breaks and ensure that Plaintiffs actually took them at all, much less on time.

Thus, Plaintiffs cannot show a material dispute of fact merely by pointing to time records that reflect a late or missed break, as such records shed no light on the dispositive question of *why* a break was late, short or missed—*i.e.*, whether the employee was denied a ***reasonable opportunity*** for a proper break. *See, e.g., Manigo v. Time Warner Cable Inc.*, No. CV 16-06722-JFW, 2017 WL 5054368, at *4 (C.D. Cal. Oct. 17. 2017) ("The key question is not necessarily whether an employee took a timely break but *why* the employee did not take a timely break.") (emphasis in original); *Silva v. AvalonBay Cmtys., Inc.,* No. LA CV15-04157, 2016 WL 4251600, at *10 (C.D. Cal. Apr. 20, 2016) ("[*Brinker*] makes significant the issue of why an employee did not [take a break].")；*Ordonez v. Radio Shack, Inc.,* No. CV 10-7060-CAS-JCGX, 2013 WL 210223, at *7 (C.D. Cal. Jan. 17, 2013) ("late, short, or missed" breaks are not violations absent proof employee lacked opportunity for compliant break). Rather, to show a genuine dispute of fact, Plaintiffs must provide evidence of specific late or missed breaks for which TWC failed to *both*: (1) provide the reasonable opportunity for a proper break; and (2) pay a premium despite being aware that Plaintiff lacked a reasonable opportunity to take a timely break. *See, e.g., Manigo*, 2017 WL 5054368, at *3-4 (holding employer required to pay premium only where "employer knows or reasonably should have known that an employee was denied a required meal break"). As shown below, undisputed facts bar Plaintiffs from proving either of these elements.

### 2. *TWC Provided the Opportunity for Timely Meal and Rest Breaks*

As shown in Section II.A.1. above, it is undisputed that:

- TWC properly and timely scheduled Plaintiffs' breaks, scheduling meal breaks

15

for at least 30 minutes prior to the fifth hour of work to ensure that, even in the event of an unusually long call, Plaintiffs would have the opportunity for a timely lunch break (SUF ¶ 4);

- TWC facilitated timely breaks by providing a phone system that allowed call center agents to enter the "break" or "lunch" auxiliary code to prevent further calls from coming in as the scheduled break approached (SUF ¶ 6);

- TWC enforced its meal/break policies by monitoring Plaintiffs' adherence to their schedules and directing them to take their breaks (SUF ¶¶ 1, 8); and

- TWC required that Plaintiffs take their breaks off the call center floor to ensure that no work could be performed during breaks (SUF ¶ 17).

Thus, there is no question that TWC went to great lengths to ensure that Plaintiffs had a reasonable opportunity to take timely and proper breaks.

There is also no question that TWC's efforts to provide the opportunity for timely breaks were successful, as ***Lutack concedes that he never had a problem taking timely and otherwise proper breaks and thus does not assert any meal or rest break claims at all, while Hueneberg asserts no rest break violations***.  (SUF ¶¶ 10-11.) Further, no Plaintiff can identify even a single occasion when they lacked the *opportunity* to take a timely break (as opposed to simply pointing to time records showing a meal break after five hours, with no evidence at all that there no opportunity to take the break earlier, or that a premium was not paid for that late break).

Additionally, Plaintiffs' assertion that their rest breaks were sometimes late because they had to finish a call does not even articulate a violation, as the law: (1) does not require that rest breaks occur precisely in the middle of each four hours of work; and (2) rest breaks can be taken late where it is "infeasible" or not "practicable" to take them earlier.  *Brinker*, 53 Cal. 4th at 1031; *see also Manigo*, 2017 WL 5054368, at \*5 ("Plaintiffs' claim that they were forced to take late rest breaks due to incoming calls is not dispositive, as employers may deviate from rest break schedules where it is not feasible to adhere to the schedules."); *Mosley v. St. Supery Vineyards & Winery*,

16

No. A137373, 2014 WL 793130, at *8 (Cal. Ct. App. Feb. 27, 2014) (impracticality of taking break in middle of work task is lawful reason to delay rest break).

Given TWC's lawful policies and extensive efforts to enforce same, allowing Plaintiffs to proceed to a jury here would suggest that employers must physically drag employees away from their workstations to avoid the prospect of a trial on meal/rest break liability. That result would defy *Brinker* by imposing the very break "policing" requirement that *Brinker* expressly rejected. Further, to find a genuine dispute of fact where, as here, Plaintiffs defied TWC's lawful mandates and ignored its enforcement efforts would fly in the face of *Brinker's* admonition that "employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability." *Brinker,* 53 Cal. 4th at 1040; *see also White v. Starbucks Corp.,* 497 F. Supp. 2d 1080, 1089 (N.D. Cal. 2007) (noting employees should not be permitted "to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes . . . . This cannot have been the intent of the California Legislature, and the court declines to find a rule that would create such perverse and incoherent incentives.") Thus, Plaintiffs' meal and rest break claims fails as a matter of law, as there is no genuine dispute of fact that TWC provided Plaintiffs with a reasonable opportunity for timely and otherwise proper meal and rest breaks.

**3.** **_TWC's Payment of Premiums Where the Opportunity for a Timely Break Was Not Provided Defeats All of Plaintiffs' Arguments_**

    **a)** **_There is No Evidence of Any Occasion Where a Plaintiff Lacked an Opportunity for a Proper Break, But Did Not Receive the Premium_**

No argument Plaintiffs could advance would create a genuine issue of fact as to their meal and rest break claims given the undisputed fact that TWC's policy is to pay the appropriate meal/rest break premium when an employee has been denied the opportunity to take a timely break. Indeed, it is undisputed that TWC's Kronos system was programmed to *automatically* add the premium when a call center agent

commenced lunch after more than five hours of work, *regardless of whether the call center agent had the opportunity to take a timely break*.

     ***Here, Plaintiffs cannot identify any instance where they lacked the opportunity for a timely break, much less where TWC did not pay them the premium***.  Summary judgment is proper on Plaintiffs' break claims for this reason alone.  *Manigo,* 2017 WL 5054368, at * 4 (granting summary judgment where plaintiffs could not "identify a single specific instance in which they lacked the opportunity" to take timely break).

     **b)**    ***There is No Evidence that any Plaintiff Complied with the Obligation to Report a Break Violation, But Still Did Not Receive the Premium***

     Even if Plaintiffs could identify particular instances where they lacked a reasonable opportunity for a break but did not receive the premium, summary judgment would still be required, as there is no evidence that TWC ever failed to pay the premium after a Plaintiff properly reported that break violation to management.  That is, where, as here, an employee is obligated to inform the company when he lacks the opportunity for a proper break, there can be no liability absent proof that the employee actually reported the violation **and** the employer failed to pay the premium.  *See, e.g, Manigo,* 2017 WL 5054368, at *5; *Amey v. Cinemark USA Inc.,* No. 13-cv-05669, 2015 WL 2251504, at *10 (N.D. Cal. May 13, 2015) (noting, in context of class certification motion, importance of testimony that some putative class members "testified that they did not inform management of the fact that they had missed meal and/or rest breaks"); *Porch v. Masterfoods, USA, Inc.,* 685 F. Supp.2d 1058, 1073-74 (C.D. Cal. 2008) (granting summary judgment where plaintiff never reported missing meal break to supervisor); *Palazzolo v. Childrens Hosp. Los Angeles,* No. B216508, 2010 WL 4869755, at *6 (Cal. Ct. App. Dec. 1, 2010) (rest break claim failed where employee was instructed to report missed breaks but failed to do so).

     Here, it is undisputed that Plaintiffs were supposed to report break violations to management.  (SUF ¶ 9.)  There is no evidence of any instance where a Plaintiff

reported a break violation but TWC failed to pay the premium.  In fact, given the undisputed facts regarding TWC's policy to pay the premium and the steps it has taken to enforce that policy, it defies logic to think TWC would arbitrarily refuse to pay a premium when an employee reported a break violation.  Thus, because there is no evidence of any noncompliant break where TWC failed to pay any of the Plaintiffs the appropriate premium, Plaintiffs' meal and rest period claims fail as a matter of law. *Manigo,* 2017 WL 5054368, at *5-6; *Porch,* 685 F. Supp. 2d at 1073-74; *Palazzolo*, 2010 WL 4869755, at *6.

**C.     Plaintiffs' Claims for Unpaid Off-the-Clock Work Fail as a Matter of Law Because Plaintiffs Cannot Show TWC Suffered or Permitted Such Work**

In Counts 3 and 4, Plaintiffs assert claims for allegedly unpaid regular, minimum and overtime wages incurred as a result of time they purportedly spent loading computer programs while off the clock before their shifts, and shutting those programs down off the clock at the end of their shifts.  To prevail on those claims, Plaintiffs must show: (1) specific occasions when they performed such work off the clock; and (2) TWC knew or should have known Plaintiffs were performing work for which they were not being compensated on those occasions, yet failed to pay them for it.  Plaintiffs lack evidence to establish either of these elements.

**1.     *Plaintiffs Cannot Show Occasions Where They Worked Off the Clock***

Importantly, "*[T]hat employees are clocked out creates a presumption they are doing no work, a presumption [plaintiffs] . . . have the burden to rebut*."  *Brinker Rest. Grp. v. Super. Ct.,* 53 Cal. 4th 1004, 1051-52 (2012) (emphasis added).  To rebut this presumption, Plaintiffs must provide evidence of specific occasions where they performed compensable activities, but were not compensated for that time.  *Manigo*, 2017 WL 5054368 at *6 (granting summary judgment on off-the-clock claim where plaintiffs could not identify any occasion where defendant was aware they had worked off clock, yet failed to pay for that work); *Reece v. Unitrin Auto and Home Ins. Co.,* No. 5:11-CV-03960 EJD, 2013 WL 245452, at *4 (N.D. Cal. Jan. 22, 2013) (granting

19

summary judgment where there was no evidence that plaintiff reported overtime for which he was not compensated).  Here, Plaintiffs cannot rebut the presumption that they were not working off the clock, as none of them can identify even a single specific occasion where this occurred, instead relying entirely upon vague, non-specific, factually unsupported and demonstrably false assertions that it was necessary for them to load and close programs off the clock to protect their performance metrics and/or avoid discipline.

Indeed, when it comes to specifics, the record destroys Plaintiffs' theory.  First, as an initial matter, the entire premise for their alleged need to violate TWC's policies and work off the clock – their conclusory, factually unsupported and incompetent assertions that it would hurt their performance metrics to comply with TWC's policies and their supervisors' admonitions by loading programs *on* the clock, or they could be disciplined for doing so – is indisputably false.  Rather, undisputed *facts* (as opposed to conclusory and speculative assertions) show that the time to load programs *on* the clock is built into the performance metrics, no one was disciplined for loading programs on the clock, and – conversely – Hueneberg was disciplined for loading programs *off* the clock.  (SUF ¶¶ 42-45, 49.)

Second, the Complaint's assertion that Plaintiffs were required to, and did, work off the clock loading and shutting down computer programs on a daily basis is eviscerated by their own testimony.  For example, as shown above, Hueneberg admits she complied with her supervisor's instructions not to work off the clock.  (SUF ¶ 39.) Gibbs also admits he *never* worked off the clock at the end of the day.  (SUF ¶ 47.)  As for Quick, the record evidence proves he was paid for time before he even entered the facility.  (SUF ¶ 48.)  Conversely, *none* of the Plaintiffs can identify any specific occasions where, in defiance of TWC's policies and management's instructions, they worked off the clock to load or shut down programs.  In the face of such undisputed facts, Plaintiffs' generic, sweeping assertions that they sometimes worked off the clock are insufficient to create a *genuine* dispute of fact.

2. ***Plaintiffs Cannot Show TWC Had Actual or Constructive Knowledge of Any Uncompensated Pre- or Post-Shift Work***

Even if Plaintiffs had evidence to rebut the presumption that they were ***not*** working off the clock, their claims would still fail as a matter of law because the undisputed facts preclude Plaintiffs from meeting their burden to show that TWC knew or should have known of the occasions where they allegedly performed work off the clock, but nonetheless failed to pay for it. Indeed, the California Labor Code's sections pertaining to uncompensated work activities are not strict liability statutes. *See, e.g., Manigo*, 2017 WL 5054368 at *5. Instead, to recover, Plaintiffs must not only show occasions where they worked off the clock, but also that TWC should have been aware that Plaintiffs were not being compensated on those occasions. *Id.* (granting summary judgment on off-the-clock claim where plaintiffs could not identify any occasion where defendant was aware they had worked off clock, yet failed to pay plaintiffs); *Ortiz v. CVS Caremark Corp.,* No. C-12-05859, 2014 WL 1117614 at *4 (N.D. Cal. Mar. 19, 2014); *Porch.,* 685 F. Supp.2d at 1065 (citing, *e.g., Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000)). The evidence precludes any such showing.

a) ***Plaintiffs' Failure to Report Specific Occasions of Uncompensated Work Despite a Policy Requiring They Do So Precludes Recovery***

Where, as here, an employer's formal policies prohibit the alleged off-the-clock work at issue, and the employer has a mechanism for ensuring that employees are paid for any unrecorded work activities – i.e., requiring them to report such work so that management can adjust their timecards to ensure payment – the Plaintiffs have an ***affirmative duty*** to report any and all specific occasions of such work to management. *Manigo,* 2017 WL 5054368 at *6; *Reece,* 2013 WL 245452, at *4 (granting summary judgment where there was no evidence that plaintiff reported overtime for which he was not compensated).

These principles entitle TWC to summary judgment here. As shown above, just

as in *Manigo* and *Reece*, it is undisputed that: (1) TWC's policies expressly prohibit off-the-clock work; and (2) TWC provided a mechanism for Plaintiffs to be paid for any off the clock work, requiring them to report such work so that their timecards could be adjusted to ensure payment for same.  (SUF ¶ 55.)  Plaintiffs admit this policy worked, as their supervisors made time-card adjustments when asked.  (SUF ¶ 55.)  Nonetheless, Gibbs admits he never told his supervisors when he was working off the clock, and he and Lutack both admitted they knew they could submit timecard adjustments, but never bothered to do so.  (SUF ¶¶ 50, 57.)  In fact, just like *Manigo* and *Reece*, ***Plaintiffs cannot identify any occasion where they made TWC aware that they had worked off the clock, yet TWC still failed to pay them for it***, as they all admitted there were no such occasions.  (SUF ¶ 60.)  Accordingly, on this basis alone, TWC is entitled to summary judgment on Plaintiffs' off-the-clock work claims.

> **b)**   ***Other Undisputed Facts Prevent Plaintiffs From Showing TWC Had Actual or Constructive Knowledge of Uncompensated Work***

Even if one were to entirely ignore the above dispositive facts and law regarding TWC's system for compensating Plaintiffs for any work performed off the clock and Plaintiffs' failure to avail themselves of same, TWC would still be entitled to summary judgment on grounds that Plaintiffs cannot show TWC had actual or constructive knowledge that Plaintiffs performed work for which they were not paid.

First, Plaintiffs cannot show TWC had actual or constructive knowledge of any pre-shift work Plaintiffs performed off the clock.  That is, there is no evidence that any supervisor knowingly permitted any Plaintiff to violate TWC's strict policy forbidding the loading of programs before clocking in.  Rather, undisputed documentary evidence, as well as Plaintiffs' own admissions, establishes that Plaintiffs were instructed that: (1) they ***must not*** load programs off the clock; and (2) if they desired, they could clock in five minutes early to load programs, or load them while they were taking calls.  (SUF ¶¶ 36-40.)  There is no evidence that any of Plaintiffs' supervisors were aware of

occasions where a Plaintiff loaded programs off the clock in direct violation of these instructions.  In fact, the undisputed facts are to the contrary, as:

- Gibbs admitted he never told his supervisors he was loading programs off the clock.  (SUF ¶ 50);

- Plaintiffs' supervisors were not present at the start of the shift; thus, they could not have observed any unrecorded pre-shift work.  (SUF ¶¶ 51-52); and

- No Plaintiff can identify any occasion where they told a supervisor they were working off the clock to load programs (or otherwise), yet the supervisor failed to ensure they were paid for that time.  (SUF ¶ 60.)

Under these circumstances, courts routinely find that employers have not suffered or permitted the alleged off-the-clock work, and thus enter summary judgment for the employer on off-the-clock claims.  *Manigo,* 2017 WL 5054368, at *6 (granting summary judgment on off-the-clock claim where plaintiffs had no evidence of specific occasions where they worked off-the-clock and were not compensated); *Reece,* 2013 WL 245452, at *4-5 (granting summary judgment where employee lacked evidence that employer had actual or constructive knowledge of off-the-clock work); *Porch,* 685 F. Supp. 2d at 1066-69 (granting summary judgment on overtime claim where employer did not have actual or constructive knowledge employee was working off clock and employer did not encourage employee to do so).  Thus, summary judgment is appropriate here, as Plaintiffs cannot show any genuine disputed of fact as to whether TWC suffered or permitted any pre-shift off-the-clock work.

Second, Plaintiffs cannot show TWC had actual or constructive knowledge of any post-shift work Plaintiffs performed off the clock.  As shown above, agents are instructed to clock out as their *last* activity of the day, *after* closing their programs. (SUF ¶ 46.)  Indeed, Gibbs admitted he was not required to work off the clock at the end of his shift, nor did he do so.  (SUF ¶ 47.)  That admission clearly confirms the **_lack_** of any requirement to close programs after clocking out.  Further, as shown above, no Plaintiff ever gave their supervisor notice of such work by asking to be paid for such

23

time.  In the face of TWC's undisputed policies, and Gibbs' unequivocal admission, Plaintiffs provide no evidence whatsoever that their supervisors had any reason at all to know that Plaintiffs were violating TWC's policies and their supervisors' instructions by working off the clock at the end of their shifts.  Thus, TWC is entitled to summary judgment on all of Plaintiffs' claims for unpaid work.

**D.      Plaintiffs' Derivative Claims Fail as a Matter of Law**

Plaintiffs have admitted that their remaining claims are entirely derivative of their underlying claims.  (DE 54-1 at 21, 25.)  Because those underlying claims fail as a matter of law for the reasons set forth above, all of Plaintiffs' derivative claims, including their PAGA claim, also fail.  *See*, e.g., *Rodriguez v. Old Dominion Freight Line, Inc.,* Case No. 13–cv–891–DSF–RZX, 2013 WL 6184432, at *8 (C.D. Cal. Nov. 27, 2013) ("As those claims have all been dismissed, they cannot serve as the basis of Plaintiffs' PAGA claim"); *Jones v. Spherion Staffing LLC,* No. LA CV11-0642 JAK, 2012 WL 3264081 at *10 (C.D. Cal. Aug. 7, 2012); *Jasper v. C.R. England, Inc.,* Case No. 08–cv–5266–GW–CWX, 2012 WL 7051321, at *9 (C.D. Cal. Aug. 30, 2012).

## IV.      <u>CONCLUSION</u>

For the above-stated reasons, TWC respectfully requests that the Court grant its motion for summary judgment in its entirety, as to each Plaintiff.

Dated:  July 26, 2019                     KABAT CHAPMAN & OZMER LLP

                                          By:    */s/ Joseph W. Ozmer II*
                                          J. SCOTT CARR
                                          JOSEPH W. OZMER II
                                          *Attorneys for Defendant TWC*
                                          *Administration LLC*