UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURENCE GIBBS, an individual, MATTHEW LUTACK, an individual, BRENT QUICK, an individual, and JESSICA HUENEBERG, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWC ADMINISTRATION, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No.:  17-cv-01513 DMS (AGS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This case comes before the Court on a motion for summary judgment filed by Defendant TWC Administration, LLC.  Plaintiffs filed an opposition to the motion, and Defendant filed a reply.  After reviewing the parties' briefs and the record on file in the case, the motion is denied in part and granted in part.

# I. BACKGROUND[1]

Time Warner provides video, high-speed data, and voice services to customers in the United States. Defendant Time Warner Cable ("TWC" or "Defendant"), a wholly owned subsidiary of Time Warner, directs Time Warner's daily business practices. Plaintiffs Laurence Gibbs, Matthew Lutack, Brent Quick, and Jessica Hueneberg worked as customer service professionals ("CSRs") and call center leads ("Leads") (collectively, "agents") for TWC in San Diego and Ontario, California. Brent Quick was employed as a CSR and Technical Support Professional from 2014 to 2017. (Quick Decl. ¶ 7). Matthew Lutack was employed as a CSR and Technical Support Professional from 2009 to 2016. (Lutack Decl. ¶ 7). Laurence Gibbs was employed from 2011 to 2014, working as CSR and Lead. (Gibbs Decl. ¶ 7). Jessica Hueneberg was employed from 2014 to 2016 as a CSR. (Hueneberg Decl. ¶ 6). In these customer service roles, Plaintiffs' essential job functions included "receiv[ing] high volume of incoming phone calls and respond[ing] to inquiries in a manner which meets high quality, productivity and other [TWC] customer service standards." (Realin Decl., Exh. 6).

At all times relevant to this action, Plaintiffs were non-exempt employees. As non-exempt employees, Plaintiffs were entitled to an hourly salary, as well as scheduled meal and rest periods. (Realin Decl., Exh. 20). TWC maintained records for all hours worked for non-exempt employees, (Realin Decl., Exh. 15), and maintained the following policy for regulating meal and rest breaks:

---

[1] In their response to Defendant's separate statement of undisputed material facts, Plaintiffs contest every one of Defendant's statements of undisputed material facts and supporting evidence. (Resp. to MSJ, ECF No. 66, Exh. 1). Nonetheless, the conditions of Plaintiff's employment and Defendant's policies and procedures are uncontested. Rather, the parties contest the extent TWC supervisors followed these procedures in accordance with California Law. As such, the Court will address such conditions, policies, and procedures as uncontested, and will detail the areas of disagreement where applicable.

"All employees are to take paid rest breaks, 15 minutes for each four hours of work. Employees must also take an unpaid lunch break of 60 minutes during each shift of 6 hours or more. Employees are never to 'punch out' and keep working (other wise [sic] known as 'working off the clock'). Working off the clock is strictly prohibited." (Realin Decl., Exh. 6).

To log employee's time, TWC used an electronic timecard system called "Kronos." (Carr Decl., Exh. 3). TWC's employees were also required to sign a "Timekeeping Policy Acknowledgement," in which they agreed to take their meal and rest breaks as scheduled. If an error existed on an employee's timecard, this agreement required the employee to "request timecard corrections in writing from [their] supervisor within one pay period of the date of an error or the date that an error was first noticed." (*Id.*).

Despite this policy, Plaintiffs Quick, Gibbs, and Hueneberg testified to missing meal breaks because their jobs involved fielding high volumes of customer service calls during their shifts. Ms. Hueneberg stated her supervisors told her she "was not allowed to end or transfer a call," so she could only take her breaks after finishing phone calls. (Hueneberg Decl. ¶ 16). Similarly, Mr. Quick testified his meal periods would occasionally be delayed past the fifth or sixth hour as a result of extended customer phone calls or team meetings, and because supervisors told him to "wrap up the call and then go on your lunch." (Realin Decl., Exh. 4, 179:9–14). Mr. Quick also testified to experiencing delayed breaks when his lunch break AUX code was not working properly. (*Id.* at 111:19–112:5). Finally, Mr. Gibbs testified that his meal and rest breaks were delayed when customer escalations occurred. (Realin Decl., Exh. 5, 71:12–15; 71:21–24; 73:16–74:1). Plaintiffs Gibbs and Lutack stated they never complained to Human Resources about any alleged meal or rest break violations, but Mr. Quick testified to attempting to contact Human Resources about the issue. (Realin Decl., Exh. 5, 69:12–14, 75:9–12; Exh. 2, 55:1–5; Exh. 4, 49:16–50:3). Further, Plaintiffs Quick, Gibbs, and Hueneberg all testified to notifying supervisors of either missed meal or rest breaks. (*Id.*, Exh. 4, 49:16–50:3; Exh. 5 at 66:17–67:3; Exh. 3 at 43:6–8, 43:13–15).

In addition to the meal and rest period claims, Plaintiffs contend TWC's phone system required off-the-clock work at the start and end of their shifts, as well as when the phone system failed during their breaks. To field high volumes of customer service calls, Plaintiffs needed to take calls as soon as they clocked in. From at least 2013, agents used a phone system called "Avaya." (MSJ, Exh. 6; King Decl. ¶ 3). This phone system connected to Kronos, so "when an agent logs into the Avaya phone system, he or she is simultaneously clocked into Kronos and on the clock." (*Id.*). However, Plaintiffs allege they needed to load their programs before taking phone calls, and thus before clocking in. As such, Plaintiffs allege TWC required off-the-clock work because they spent time loading their programs before clocking in.

Further, CSRs were evaluated based on several performance metrics, including the amount of "call avoidance"—time spent clocked in but not taking calls. Incidents of call avoidance would negatively impact performance metrics. (Lutack Decl. ¶ 13). Thus, Plaintiffs contend they needed to perform off-the-clock work to avoid being negatively evaluated for "call avoidance" by loading programs before clocking in and by clocking out before logging out of their programs and shutting down their computers. (Lutack Decl. ¶ 15). Moreover, TWC required agents to enter a "break" or "lunch" auxiliary code ("AUX code") into their phone system to prevent calls from coming through during a scheduled break. However, Plaintiffs allege this code would sometimes not work and they would be unable to clock in at the end of their meal period. (SAC ¶ 57). Thus, Plaintiffs also contend TWC required off-the-clock work for time whenever they were unable to clock in at the end of their meal period.

Although Plaintiffs claim TWC required this work, TWC's formal timekeeping policy mandated "all non-exempt (hourly) employees [be] paid for all time worked on behalf of the Company, including any overtime worked." (Realin Decl., Exh. 20). Relatedly, the policy notes: "Off the clock work is strictly prohibited. That means you must not perform work outside of your ordinary work hours unless you are required to do so by the Company." (*Id.*). In addition to core job functions, the timekeeping policy

included "logging into or out of computer programs or software applications" in its definition of "work time." (*Id.*).

Further, TWC's policy required employees to verify their hours, as recorded in their time sheets on Kronos:

"You are responsible for ensuring that your time submitted in Kronos, TWC's timekeeping system, is accurate. You must be clocked into Kronos prior to performing work and should not clock out of Kronos until you have completed your work for the day. In addition, you should not perform any work during meal or rest breaks." (Realin Decl., Exh. 20).

This policy was further reiterated by two emails from supervisors. On December 18, 2015, Supervisor Christina Ridge sent an email re-iterating the company policy, but also reminded employees that "[t]here is no grace period before a scheduled shift or returning from break or lunch" and that they "are expected to launch AAD & Avaya and start taking calls immediately – additional tools can be loaded as you go, and as needed." (Realin Decl., Exh. 11). Further, the email noted "[a]ny un-coded/not ready AUX usage which prevents receiving a call is viewed as call avoidance and is subject to disciplinary action including, but not limited to, termination." (Realin Decl., Exh. 11). This email was sent to supervisors and Plaintiff Jessica Hueneberg.

On April 21, 2016, Supervisor Christina Ridge sent another email to select supervisors, but not including any of the named Plaintiffs, re-iterating that no work should be done off the clock. Further, it instructed that employees could load their tools before their scheduled shift by manually clocking into Kronos "up to 5 minutes before [their] scheduled start of shift." (King Decl., Exh. 1). She also included a copy of an email from another manager, Ron Collazo, instructing supervisors to ensure their non-exempt employees took their rest and meal breaks and did not load tools before clocking in for their shifts. (*Id.*). He noted, "[b]oth constitute 'working off of the clock' and are considered labor law violations." (*Id.*).

On August 28, 2017, TWC updated its customer operations soft phone login/log out process guide to reflect changes to its computer system. This new system permitted CSRs

to load programs before logging in. (Realin Decl., Exh. 19). According to this guide, TWC notified employees to not "log into any systems or applications until after [they] have logged [in.]" (*Id.* at 2). Further, the guide provides for a "5-minute grace period" at the start of employee's shifts, which allowed employees' "schedule attendance metric" to "not be affected" if they "are available to take calls within five minutes after the start of [their] scheduled shift." (*Id.* at 2). The guide also provided for the use of the "lunch" status in Avaya, which allowed employees to pause incoming calls during the duration of their break and instructed employees to not log out until after closing all applications and systems. (*Id.* at 3). However, all named Plaintiffs worked at TWC prior to 2017 and therefore used the Avaya computer system before these changes.

On April 20, 2017, Plaintiffs filed their Complaint in the Superior Court of California, County of San Diego. On July 26, 2017, Defendant filed a notice of removal and answered Plaintiffs' complaint. (ECF No. 1; ECF No. 2). On August 18, 2017, Plaintiffs filed a second amended complaint. (ECF No. 11, "SAC"). In this complaint, Plaintiffs alleged eight causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay regular and minimum wages; (4) failure to pay overtime compensation; (5) failure to furnish timely and accurate wage statements; (6) failure to pay all wages due upon termination; (7) violation of California's Unfair Competition Law; and (8) violations of the Private Attorney General Act ("PAGA"). (*Id.*). On September 14, 2017, Defendants filed a motion to stay the action, pending the California Supreme Court's decision in *Troester v. Starbucks Corporation*. (ECF No. 22). This Court granted the motion to stay on October 24, 2017. (ECF No. 24). On July 26, 2019, Defendant filed the present motion for summary judgment. ("MSJ", ECF No. 60). On August 14, 2019, both parties submitted a notice of joint stipulation for this Court to consider the motion on summary judgment prior to the motion for class certification. (ECF No. 64). This Court granted the joint stipulation on August 14, 2019. (ECF No. 65).

/ / /

/ / /

## II. DISCUSSION

Defendant moves for summary judgment on all of Plaintiffs' claims, but focuses on Plaintiffs' first four claims because the remaining claims are derivative of their underlying claims. (MSJ at 3). Therefore, Plaintiffs' meal break, rest break, and off-the-clock (including overtime) claims will be addressed here.

### A. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.*; *See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). To do so, the non-moving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).

More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must show that evidence in the record could lead a rational trier of fact to find in its favor. *Id.* at 587. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment." *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989) (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied* 484 U.S. 1006, 108 S. Ct. 698, 98 L.Ed.2d 650 (1988)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *TW. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**B. Meal Break Claims**

Plaintiffs' first claim is for violation of California Labor Code § 512 and its applicable wage order. (SAC ¶ 38). California Labor Code § 512(a) mandates a 30-minute meal break for non-exempt employees working more than five hours, and a second meal period for employees working more than ten hours. These provisions require "a first meal period no later than the start of an employee's sixth hour of work" and, if applicable, "a second meal period after no more than 10 hours of work in a day." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal.4th 1004, 1041–42, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012). "If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered." *Id.* at 1039. Although an employer is obligated to provide a meal period to its employees, it satisfies this obligation if at the end of five (or ten) hours "it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id.* at 1040.

If the employer knows or reasonably should know that an employee was denied a proper meal break, the employer must "pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided," otherwise known as a "meal premium payment." Cal. Lab. Code § 226.7(c); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1101 (2007). But if an employer provides a proper break for employees and does not impede or discourage them from taking it, "its knowledge that an employee is working through a meal break establishes no violation of the duty to pay premium wages, though the employer must still compensate the employee for the time worked." *Safeway, Inc. v. Super. Ct.*, 238 Cal. App. 4th 1138, 1155, 190 Cal. Rptr. 3d 131, 144 (Cal. Ct. App. 2015). "In contrast, if the employer knows that meal breaks are missed, shortened, or unduly delayed because the employer has instructed the employee to work, or has otherwise impeded the taking of breaks, that duty is contravened, absent a suitable waiver or agreement by the employee." *Id.* (citing *Brinker*, 53 Cal. 4th at 1039–40, 1049). Nevertheless, "the employer is not obligated to police meal breaks and ensure work thereafter is performed." *See Brinker*, 53 Cal. 4th at 1040. Rather, "[b]ona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employee in violation of its obligations and create liability for premium pay." *See id.* at 1040–41.

"Under these standards, a plaintiff must show that [an] employer impeded, discouraged or prohibited employees from taking required breaks." *Silva v. AvalonBay Comtys., Inc.*, 2016 WL 425100, at *10 (C.D. Cal. 2016) (citing *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008)). When weighing the issue of delayed or missed meal breaks at the summary judgment stage, therefore, the court must assess *why* the employee did not take a timely break, rather than *if* they took a timely break. *See Manigo v. Time Warner Cable, Inc.*, CV:16-06722-JFW (PLA), 2017 WL 5054368 at *4 (C.D. Cal. 2017) (citing *id.*). In sum, for Plaintiffs here to prevail on a claim for violation of California Labor Code § 512, they must establish (1) they are non-exempt employees who are eligible

for meal breaks, and who experienced delayed or missed breaks in violation of California law; (2) TWC did not provide proper meal breaks, or impeded or discouraged Plaintiffs from taking such breaks; (3) TWC had notice of missed or delayed breaks; and (4) TWC did not pay requisite premiums for any such meal breaks. At this stage, summary judgment is appropriate only if there is no genuine dispute of material fact regarding all four issues.

First, the parties here do not dispute that employees were non-exempt employees, and thus eligible for meal breaks. However, only three of the named Plaintiffs actually testified to missing missed meal breaks in their depositions and declarations. One plaintiff, Mr. Lutack, did not describe any missed meal breaks. Therefore, summary judgment is appropriate for Mr. Lutack's meal break claim. However, the remaining three plaintiffs meet the first prong.

Next, on the second prong, the parties dispute whether TWC provided proper meal breaks, and whether TWC impeded or discouraged Plaintiffs from taking breaks. This issue involves two separate disputes between the parties: first, whether TWC maintained an adequate meal break policy in general; and second, whether Plaintiffs' supervisors impeded or discouraged them from taking breaks.

On the parties' dispute regarding whether TWC's meal policy is lawful, the Court finds in favor of TWC. TWC's meal break policy states: "Employees working more than 6 hours must take a minimum 30-minute unpaid lunch break." (Realin Decl., Exh. 15). Plaintiffs contend this policy is facially unlawful because "absent waiver, California law provides for a meal break on shifts exceeding 5, not 6 hours." (P's Opp. To MSJ at 17) (citing Cal. Lab. Code § 512(a)). Further, Plaintiffs contend "there is no evidence meal breaks were waived on shifts shorter than 6 hours[], and TWC did not produce a single meal break waiver." (Id.). However, TWC asserts it properly scheduled Plaintiffs' breaks at least 30 minutes before the fifth hour of work and the meal break policy provides breaks for shifts of five to six hours. (MSJ at 1–2; Suppl. King. Decl. ¶ 3–8). TWC also notes Plaintiffs cannot raise this new argument because they neither plead it in their complaint nor raised it in discovery, and they cannot oppose the present motion with unpled theories.

(Reply at 5) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)). Regardless, this policy appears lawful because it provides for meal breaks on all shifts exceeding six hours, with meal breaks to be taken prior to the beginning of the fifth hour on a shift exceeding six hours. *See Dilts v. Penske Logistics, LLC.*, 188 F. Supp. 3d 1016, 1020 (S.D. Cal. 2016) ("Although a policy that affirmatively schedules an employee's first meal break after the start of the sixth hour of work or after the start of the eleventh hour of work could violate California law, that is not the case here.").

Plaintiffs also contend TWC violated California law because their supervisors impeded or discouraged them from taking breaks. The parties dispute whether Defendant met its obligation under *Brinker* to permit Plaintiffs "a reasonable opportunity to take an uninterrupted 30-minute break", and "not impede or discourage them from doing so." *Brinker*, 53 Cal. 4th at 1040. In its motion, TWC argues it did not impede or discourage Plaintiffs from taking breaks for three reasons: first, because TWC used a phone system that included a feature to allow Plaintiffs to prevent additional calls as their break approached; second, Plaintiffs' supervisors never told them to skip breaks, or delay them beyond the time permitted by law; and third, Plaintiffs' supervisors were adamant that Plaintiffs comply with break schedules. (MSJ at 1–2). However, Plaintiffs contend their supervisors impeded them from taking timely breaks by not permitting them to transfer calls or leave meetings to take their breaks. (P's Resp. to DSUF at No. 1; P's Opp. To MSJ, Exh. 3 at 43:3–8; 44:14–25) ("They set forth times that you are supposed to adhere to. And if you are on a call or in a meeting, you are not allowed to transfer the call or leave the meeting to go to lunch at or before your five-hour mark."). An employer may "not undermine a formal policy of providing meal breaks by pressuring [its] employees to perform their duties in ways that omit breaks." *Brinker*, 53 Cal. 4th at 1040–41. In addition, an employer cannot "supplant a formal policy of providing meal . . . breaks by imposing conflicting policies that impede or discourage an employee from taking compliant breaks." *Novoa v. Charter Comm'ns, LLC.*, 100 F. Supp. 3d 1013, 1022 (E.D. Cal. 2015).

Defendant contends summary judgment is appropriate because the facts here are similar to *Manigo v. Time Warner*, where a district court addressed whether TWC met its obligation to provide adequate meal and rest periods. *Manigo v. Time Warner Cable, Inc.*, CV 16-06722-JFW (PLA), 2017 WL 5054368 (C.D. Cal. 2017). There, the plaintiffs argued TWC failed to meet its obligation to provide breaks under the *Brinker* standard because of a "combination of short staffing and [d]efendants' requirement that dispatchers answer all incoming calls." *Id.* at *4. However, plaintiffs did not allege missed or delayed breaks with specificity, instead pointing to time sheet records showing delayed breaks. *Id.* In granting summary judgment, the district court noted plaintiffs did not adequately show *why* these breaks were delayed. *Id.*

Here, three of the Plaintiffs go beyond the plaintiffs in *Manigo* by alleging instances of delayed meal breaks because of work-related demands or pressure from their supervisors. (*See* Realin Decl., Exh. 5, 71:12–24; Realin Decl., Exh. 4, 182:20–21; 183:3–4; 111:19–112:6; Exh. 3 at 43:6–8; 43:13–15). Mr. Quick testified to experiencing delayed meal breaks (past the fifth or sixth hour of work) because of long customer phone calls, team meetings, and when the lunch break AUX code did not work properly and he continued receiving calls. (Realin Decl., Exh. 4 182:20–21; 183:3–4; 111:19–112:6). Further, Mr. Quick's supervisor told him to finish his calls prior to taking his meal break. (*Id.* at 179:9–14) ("Wrap up the call and then go on your lunch"). Similarly, Ms. Hueneberg testified to experiencing late meal breaks due to customer calls or meetings. (Realin Decl, Exh. 3 at 43:6–8; 43:13–15). She noted she did not voluntarily choose to delay these breaks, but rather was instructed by her supervisors to continue the calls, even if it meant delaying lunch. (*Id.* at 186:22–25; 44:14–25.) Finally, although Mr. Gibbs did not identify a supervisor specifically telling him to miss this break, he testified to it being delayed because of the nature of his job. (Realin Decl., Exh. 5 at 71:12–24).

In response, TWC disputes its supervisors impeded or discouraged Plaintiffs from taking timely breaks. Rather, TWC contends it scheduled timely breaks for Plaintiffs and enforced its lawful meal break policies by "reminding Plaintiffs to take their breaks as

scheduled, and coaching them when and if they failed to do so." (SUF at No. 8). As such, a genuine dispute of material fact exists regarding this element. *Ordonez*, 2013 WL 210223 at *7 (finding that evidence of delayed, short, or missed meal periods is insufficient to show that a violation occurred because such evidence does not explain why such a break was delayed, short, or missed, and an employee could have voluntarily opted to start their meal break late, cut it short, or not take it); *Lopez v. United Parcel Service, Inc.*, 2010 WL 728205 at *8 (N.D. Cal. 2010) (finding a genuine dispute of material fact existed regarding meal breaks when a plaintiff allegedly missed breaks "due to the press of business").

On the third element, there is sufficient evidence for a jury to conclude Defendant had notice of missed or delayed breaks. Here, as noted, Mr. Quick and Ms. Hueneberg testified to notifying their supervisors about delayed breaks but being told to continue taking calls. Though Mr. Gibbs did not testify to notifying his supervisors of delayed breaks, Defendant's timekeeping system automatically added a meal premium payment if an employee did not clock out by their fifth hour of work, "with supervisors having the authority to remove such penalties only upon confirmation that the agent in fact had the opportunity for a timely break, but chose to take it later." (SUF at No. 22; King Decl. ¶ 16). Defendant, based on its time-keeping system, could have known about these missed breaks, even if its supervisors were not informed by Plaintiffs. Therefore, the third prong is met for these three Plaintiffs.

Finally, there is a genuine dispute of material fact regarding whether meal premiums were paid for these delayed breaks. Defendant contends Plaintiffs were provided meal premiums for any untimely breaks. (MSJ at 18). Mr. Quick testified that he was not paid meal penalties for delayed breaks, though he also testified he never requested a meal penalty premium for those missed breaks. (Realin Decl., Exh. 4, 174:16–25; 175:3–5). Nevertheless, Mr. Quick also testified, as discussed, to notifying his supervisors of these missed breaks. Similarly, Ms. Hueneberg did not testify to receiving any meal premiums, though she notified supervisors of delayed breaks, as discussed. Mr. Gibbs, as discussed, testified to not receiving any meal premium payments and to never asking for a meal

premium, but he also noted he was unaware he could get paid a meal premium for a delayed lunch. (Realin Decl., Exh. 5, 75: 1–8). Further, Plaintiffs provide expert testimony showing only 3 premium payments were paid out of 42 instances of late meal breaks. (P's Resp. to DSUF at No. 2). Though Defendant disputes the credibility of the expert witness, the Court cannot delve into that determination at this stage. Because Plaintiffs and Defendant both provide substantial evidence supporting their positions, there is a genuine dispute of material fact here. Therefore, summary judgment is not appropriate for Plaintiffs Hueneberg, Gibbs, and Quick's meal break claims. Summary judgment is appropriate for Plaintiff Lutack's meal break claims.

## C. Rest Break Claims

Second, Plaintiffs Quick and Gibbs contend Defendant failed to provide a sufficient opportunity for them to take rest breaks. California Labor Code § 226.7(b) provides:

> "An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."

Further, the applicable wage order provides for the remedy for such a violation—a rest break premium equal to "one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." IWC Order No. 4–2001 (12)B. "The text of the wage order is dispositive" because it "defines clearly how much rest time must be authorized." *Brinker*, 53 Cal.4th at 1028. Moreover, the standard for employers to provide rest breaks is more flexible than the standard for meal periods:

> "The only constraint on timing is that rest breaks must fall in the middle of work periods 'insofar as practicable.' Employers are thus subject to a duty to make a good faith effort to authorize and permit rest breaks in the middle of each work period, but may deviate from that preferred course where practical considerations render it infeasible." *Id.* at 1031.

Plaintiffs contend Defendant failed to authorize and permit rest periods during the class period and further, failed to pay the applicable premiums for those delayed periods.

Nonetheless, Defendant contends summary judgment is appropriate because Plaintiffs Quick and Gibbs "admit they were never instructed to skip a break, and that if they took a rest break later than scheduled they did so because it was not practicable or feasible to take it at the scheduled time because they were on a call," and Plaintiffs Hueneberg and Lutack did not assert rest break claims. (MSJ at 6).

In *Manigo*, the plaintiffs similarly argued they were forced to take delayed breaks or miss their breaks because TWC "pressured them into taking calls instead of taking their scheduled breaks." 2017 WL 5054368 at *5. There, the court found the plaintiffs' allegations of delayed rest breaks due to incoming calls were insufficient to demonstrate a genuine dispute of material fact because the flexible *Brinker* standard allows "employers [to] deviate from rest break schedules where it is not feasible to adhere to the schedules." *Id.* Moreover, there, the plaintiffs "admitted at their depositions that supervisors never specifically instructed them to skip breaks," and the court found plaintiffs "frequently made subjective personal decisions about when to take breaks based on their perception of coverage rather than their schedules despite the fact that they never had responsibility for determining their coverage needs." *Id.* Finally, the court noted the defendant's official policies required plaintiffs to notify supervisors about missed breaks, and found plaintiffs did not do so and further, "did not identify a single specific instance in which they did not receive the appropriate premium they were allegedly due for missing a break." *Id.*

Here, Mr. Quick's rest break claims suffer a similar defect. He fails to identify any instance with specificity, instead stating, "it wasn't like a common occurrence . . . you know it's not even worth mentioning." (Realin Decl., Ex. 4, 158:13–25; 159:1–3). Therefore, summary judgment is appropriate for Mr. Quick's rest break claims.

Lastly, Mr. Gibbs asserts several rest break claims: he testified to missing breaks when he was "incredibly slammed" with calls and experiencing delayed breaks due to the press of business. (Realin Decl., Exh. 5 65:18–23; 67:22–25; 68:1–16). Although he informed his supervisors of missed and delayed breaks, he noted his supervisors told him to "do [his] best" to take his breaks, and one was "adamant" about him taking his breaks.

(*Id.*, 66:17–25; 67:1–12; 67:13–16). While Mr. Gibbs provided no evidence of Defendant encouraging him to skip breaks, there is a triable question of fact because Mr. Gibbs noted he only missed breaks because of an influx of calls, leaving him unable to take a break. *See Lopez*, 2010 WL 728205 at *8 (N.D. Cal. 2010) (finding a genuine dispute of material fact existed regarding missed rest breaks when a plaintiff allegedly missed breaks "due to the press of business"). Therefore, summary judgment is not appropriate for Mr. Gibbs' rest break claims. Summary judgment is appropriate for the remaining Plaintiffs' rest break claims.

### D. Third and Fourth Causes of Action: Failure to Pay Regular and Minimum Wages and Failure to Pay Overtime Wages ("Off-the-Clock" Claims)

Finally, Plaintiffs contend Defendant failed to pay regular and minimum wages and overtime wages in violation of California law. Plaintiff contends Defendant violated these statutes by requiring Plaintiffs to work off-the-clock at three times: (1) when loading their programs before clocking in to take calls; (2) when closing programs after clocking out of their shifts; and (3) when "they were unable to clock back in at the end of their meal period due to technical difficulties." (SAC at ¶¶ 51–60).

California Labor Code Sections 1197 and 1198 mandate the minimum wage and the maximum hours worked for employees. California Labor Code § 510 regulates overtime hours. California Labor Code § 1194 provides the cause of action to enforce these provisions:

> "(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

In California, employees "not permitted to use time effectively for their own purposes are considered subject to the control of their employer." *Stevens v. GCS Service, Inc.*, 281 Fed. Appx 670, 672 (9th Cir. 2008) (internal quotation marks and citations

omitted). When determining whether employees are subject to their employer's control, "the level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." *Id.* However, employees must be compensated when they are "suffered or permitted to work" by their employer. *Id.* Whether an employee was "suffered or permitted to work" can involve a genuine issue of material fact, such as when a Plaintiff submits evidence through deposition statements that he received calls from his employer and engaged in work-related phone conversations during his commute. *Id.*

"[A] plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert denied*, 135 S. Ct. 2835 (2015). To prevail on an off-the-clock claim, Plaintiffs "must prove that [employer] had actual or constructive knowledge of [their] off-the-clock work." *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007).

There is no genuine issue of material fact when the employer lacks "actual or constructive knowledge of any . . . supposed off-the-clock work" because an employer's liability for an off-the-clock overtime claim "hinges on such knowledge." *Plaisted v. Dress Barn, Inc.*, 2013 WL 300913 at *4 (C.D. Cal. 2013) (citing *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). Thus, summary judgment may be appropriate for such claims when plaintiffs testify to not informing their supervisors of any off-the-clock work. *See, e.g.*, *Reece v. Unitrin Auto & Home Ins. Co.*, 2013 WL 245452, at *4 (N.D. Cal. 2013) (granting summary judgment on plaintiff's off-the-clock claims because he did not notify his employers of off-the-clock work, instead alleging they had notice from timestamps on emails he sent after hours).

Finally, the amount of time worked need not be significant; a few minutes can be sufficient for an off-the-clock claim. There is no de minimis doctrine in California. "An employer that requires its employees to work minutes off the clock on a regular basis or as

a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 847 (2018).

Defendant contends summary judgment is warranted for Plaintiffs' off-the-clock claims for two reasons: (1) Plaintiffs failed to show occasions where they worked off the clock; and (2) Plaintiffs "cannot show that TWC had actual or constructive knowledge of any uncompensated pre- or post-shift work." (MSJ at 19–21).

Defendant initially contends it is entitled to summary judgment because Plaintiffs cannot show occasions where they worked off the clock. (MSJ at 19). Quoting *Brinker*, Defendant notes, when "employees are clocked out" that "creates a presumption they are doing no work, a presumption [plaintiffs] . . . have the burden to rebut." *Id.* (quoting 53 Cal. 4th at 1051–52). As such, they allege Plaintiffs have failed to meet their burden for their off-the-clock claims. However, all Plaintiffs described instances of off-the-clock work in their depositions. They testified to arriving to work early to load programs before clocking in, so they were ready to take calls immediately upon clocking in. (P's Resp. to DSUF at No. 41). Plaintiff Lutack testified to notifying every supervisor that he was working off the clock by loading programs before he started his shift. (Realin Decl., Exh. 2, 119:18–120:8). Plaintiff Hueneberg described an instance where her supervisor, Aaron Powell, told her that she could not clock in prior to loading her programs, but rather advised her to start up her programs and then clock in. (Realin Decl., Exh. 3, 53:23–55:4). Plaintiff Gibbs testified that each of his supervisors told him to "make sure" his programs were open by the time he clocked in. (Realin Decl., Exh. 5, 60:1–6). Plaintiff Quick testified to asking his supervisor about why he needed to come in prior to his shift. (Realin Decl., Exh. 4, 48: 7–12). He also testified that one of his supervisors instructed him to "Open up all [of his] tools and then clock in." (*Id.* at 129:7–19). Further, he testified to sending emails while off-the-clock, including approximately five times during his lunch break or rest break. (*Id.*, 164:10–25; 165:1–25).

Defendant's contention, however, has merit with respect to Plaintiffs' off-the-clock claims for work performed after clocking out and during meal and rest periods. Plaintiffs have failed to describe with specificity any instances of working off-the-clock after clocking out or during break periods. Accordingly, summary judgment is appropriate for Plaintiffs' claims of off-the-clock work after clocking out or during meal and rest periods, but their claims for work performed before clocking in raise triable questions of fact.

Defendant contends "Plaintiffs could not identify any occasion when they complied with the policy requiring them to request a timecard adjustment" and their supervisor failed to do so. (MSJ at 22, SUF at No. 60). However, as discussed, each Plaintiff identified an instance in which they confronted their supervisor about off-the-clock work, or alternatively, where their supervisor instructed them to perform off-the-clock work. Therefore, this argument is insufficient because Plaintiffs provided evidence of times when they reported their off-the-clock work.

Similarly, Defendant contends Plaintiffs did not identify times when they worked off the clock and were not paid for their time. (MSJ at 12). First, Defendant contends it is entitled to summary judgment because it is undisputed that "Plaintiffs did not work off the clock every day." (*Id.*). Nevertheless, Plaintiffs provided evidence that their situation is similar to that in *Troester*, where the California Supreme Court found that "a few minutes of extra work a day can add up." 5 Cal. 5th at 847. There, the plaintiff submitted evidence that "Starbucks's computer software required him to clock out on every closing shift before initiating the software's 'close store procedure' on a separate computer terminal in the back office." *Id.* at 835–36. Troester's closing tasks required him to work four to 10 additional minutes per day. *Id.* at 836. Similarly here, Plaintiffs provide evidence that loading programs took several minutes per day. (Opp. to MSJ at 10; Realin Decl., Exh. 1).

Finally, Defendant contends there are "other undisputed facts" that prevent Plaintiffs from showing TWC had actual or constructive knowledge of uncompensated work. Defendant points to evidence Plaintiffs were instructed not to work off the clock and an email from one of Hueneberg's supervisors, Ms. Ridge, telling members of the team to not

load programs off the clock, but instead clock in early to do so. (King Decl. Exh. 1). Nevertheless, Plaintiffs Lutack, Gibbs, and Quick dispute receiving this email. (P's Resp. to DSUF at No. 38). Though Hueneberg received one of the emails, she also testified that another supervisor instructed her to load programs prior to clocking in. (Realin Decl., Exh. 3, 54:23–55:4). Because there is conflicting testimony from each party, there is a genuine dispute of material fact.

Finally, although Defendant argues Plaintiffs could have loaded programs by other means after clocking in, Plaintiffs dispute knowing about these alternative means. (P's Resp. to DSUF at No. 37). Defendant also points to the 2017 changes to the phone system that allowed a 5-minute grace period after clocking in to load programs, but those changes are inapplicable because Plaintiffs' claims arose before the changes were made. Moreover, Plaintiffs claim they notified supervisors of their off-the-clock issues, and Defendant disputes any such notice was given to supervisors. Thus, whether the employer "suffered or permitted" the employees to work during this time is disputed. *See Stevens*, 281 Fed. Appx at 672. Plaintiffs have raised a genuine dispute of material fact regarding Defendant's knowledge of this off-the-clock work. Therefore, Defendant's motion for summary judgment is denied for the third and fourth claims, with respect to the off-the-clock work involved with loading programs prior to clocking in. Defendant's motion is granted for off-the-work claims based on time spent working after clocking out or during breaks.

**E. Plaintiff's Remaining Causes of Action: Failure to Furnish Timely and Accurate Wage Statements; Failure to Pay All Wages due Upon Termination; Violation of California's Unfair Competition Law; and PAGA**

Finally, Defendants contend Plaintiff's remaining claims are "entirely derivative of their underlying claims," and "[b]ecause those underlying claims fail as a matter of law . . . all of Plaintiff's claims . . . also fail." (MSJ at 24). Nevertheless, the court finds some of Plaintiffs' underlying claims demonstrate a genuine dispute of material fact, as discussed.

17cv1513

Therefore, Defendant's motion for summary judgment on Plaintiff's remaining claims is denied to the extent they derive from those claims.

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted for (1) Mr. Lutack's meal period claims; (2) Mr. Lutack, Ms. Hueneberg, and Mr. Quick's rest period claims; and (3) all Plaintiffs' off-the-clock claims based on time worked after clocking out or during breaks.  Defendant's motion for summary judgment is denied for the remaining claims.  In accordance with the parties' stipulation, Plaintiff's motion for class certification is addressed in a subsequent order.

**IT IS SO ORDERED.**

Dated:  January 3, 2020

Hon. Dana M. Sabraw
United States District Judge

17cv1513