UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURENCE GIBBS, an individual, MATTHEW LUTACK, an individual, BRENT QUICK, an individual, and JESSICA HUENEBERG, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWC ADMINISTRATION, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 17-cv-1513 DMS (AGS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Pending before the Court is Plaintiffs' motion for class certification. Defendants filed a response, and Plaintiffs file a reply. For the reasons set forth, this motion is denied.

/ / /

/ / /

1

## I. BACKGROUND[1]

Time Warner provides video, high-speed data, and voice services to customers in the United States. Defendant Time Warner Cable ("TWC"), a wholly owned subsidiary of Time Warner, directs Time Warner's daily business practices. Plaintiffs Laurence Gibbs, Matthew Lutack, Brent Quick, and Jessica Hueneberg worked as customer service professionals ("CSRs") and call center leads ("leads") (collectively, "agents") for Defendant Time Warner Cable ("TWC" or "Defendant") in San Diego and Ontario, California. Brent Quick was employed as a CSR and Technical Support Professional from 2014 to 2017 (Quick Decl. ¶ 7). Matthew Lutack was employed as a CSR and Technical Support Professional from 2009 to 2016. (Lutack Decl. ¶ 7). Laurence Gibbs was employed from 2011 to 2014, working as CSR and Lead. (Gibbs Decl. ¶ 7). Jessica Hueneberg was employed from 2014 to 2016 as a CSR. (Hueneberg Decl. ¶ 6). In these customer service roles, Plaintiffs assisted customers over the phone regarding issues related to sales, billing, and technology support. (Memo re: MCC, 4).

At all times relevant to this action, Plaintiffs were non-exempt employees. As such, Plaintiffs were entitled to scheduled meal and rest periods. TWC maintained the following policy regulating off-the-clock work, meal breaks, and rest breaks:

> "All employees are to take paid rest breaks, 15 minutes for each four hours of work. Employees must also take an unpaid lunch break of 60 minutes during each shift of 6 hours or more. Employees are never to 'punch out' and keep working (other wise [sic] known as 'working off the clock'). Working off the clock is strictly prohibited." (Realin Decl., ECF No. 66, Exh. 6).

Despite this policy, Plaintiffs contend TWC's phone system required off-the-clock work at the beginning of their shifts. To field high volumes of customer service calls, Plaintiffs needed to take calls as soon as they clocked in. From at least 2013, agents used a phone system called "Avaya." (MSJ, Exh. 6; King Decl. ¶ 3). This phone system is

---

[1] A more detailed factual summary is available in this Court's order on summary judgment (ECF No. 70).

connected to Kronos, TWC's time-keeping system, so "when an agent logs into the Avaya phone system, he or she is simultaneously clocked into Kronos and on the clock." (*Id.*). However, Plaintiffs allege they needed to load their programs before taking phone calls, and thus before clocking in. As such, Plaintiffs allege TWC required off-the-clock work because they spent time loading their programs before clocking in.

In addition to off-the-clock claims, Plaintiffs Quick, Gibbs, and Hueneberg testified to missing meal breaks because their jobs involved fielding high volumes of customer service calls during their shifts. Ms. Hueneberg stated her supervisors told her she "was not allowed to end or transfer a call," so she could only go on her breaks after finishing phone calls. (Hueneberg Decl. ¶ 16). Similarly, Mr. Quick testified his meal periods would occasionally be delayed past the fifth or sixth hour as a result of extended customer phone calls or team meetings, and because supervisors told him to "wrap up the call and then go on your lunch." (Realin Decl., Exh. 4, 179:9–14). Finally, Mr. Gibbs testified that his meal and rest breaks were delayed if customer escalations occurred. (Realin Decl., Exh. 5, at 71:12–15; 71:21–24; 73:16–74:1). Further, Plaintiffs Quick, Gibbs, and Hueneberg all testified to notifying supervisors of either missed meal or rest breaks. (*Id.*, Exh. 4, 49:16–50:3; Exh. 5 at 66:17–67:3; Exh. 3 at 43:6–8, 43:13–15).

On May 28, 2019, Plaintiffs filed the present motion for class certification. (ECF No. 54, "MCC"). Plaintiffs move for class certification on all current and former non-exempt employees of Defendant who worked in a call center as a Customer Service Professional, Customer Service and Billing Professional, Technical Support Professional, Technical Support and Billing Professional, and/or Call Center Lead, between April 20, 2013 and the date of class certification, who have not signed an arbitration agreement with Defendant as of the date the complaint was filed. (*Id.* at 1). Plaintiffs seek to certify a class of employees from Defendant's San Diego, CA and Ontario, CA offices. Defendant's corporate records indicate 536 putative class members in their San Diego office, and over 300 in their Ontario office. (Markham Decl., ¶ 15). Of this larger group, Plaintiffs move for class certification for the following individual sub-classes:

3

(1) the "off-the-clock subclass," including employees who were not paid for all hours worked, in any pay period within the class period;

(2) the "overtime subclass," including employees who were not provided with overtime pay during the class period, including only employees who worked more than eight hours in any given day and more than forty hours in any given week during the class period;

(3) the "meal break subclass," including employees who worked more than five hours and were not provided with uninterruptable meal periods of at least 30 minutes or delayed meal periods that began after the fifth hour of work;

(4) the "rest break subclass" of employees who were not provided with uninterruptable rest breaks of at least ten minutes for each four hours of work;

(5) the "wage statement subclass" including employees who were not provided with accurately itemized wage statements for all hours worked; and

(6) the "waiting time subclass" of employees who were not paid all wages due and owing at the time of separation. (MCC at 1).

On July 26, 2019, Defendant filed a motion for summary judgment on all of Plaintiffs' claims. (ECF No. 60). On August 14, 2019, the parties stipulated to this Court deciding the motion for summary judgment prior to the present motion for class certification. (ECF No. 64). On January 3, 2020, this Court granted this motion in part and denied it in part, finding triable issues of fact for all named Plaintiffs' off-the-clock claims for work performed prior to clocking in, Plaintiff Hueneberg, Gibbs, and Quick's meal break claims, and Plaintiff Gibbs' rest break claims, and any related wage statement and waiting time claims. (ECF No. 70). Therefore, class certification will only be addressed with respect to those claims.

## II. DISCUSSION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011). "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the

requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 832 (9th Cir. 2013); *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806–07 (9th Cir. 2010) ("*United Steel*") (burden is on the moving party).

The district court must conduct a rigorous analysis to determine whether Rule 23's prerequisites are met. *Ge. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (19718) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)). "Although some inquiry into the substance of the case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). Rather, the Court's review of the merits is limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 Advisory Committee Notes. If a court is not fully satisfied that the requirements of Rule 23(a) and Rule 23(b) are met, certification should be denied. *Falcon*, 457 U.S. at 161.

**A. Rule 23(a) Requirements**

Rule 23(a) allows one or more members of a class to sue as representative parties when: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical to the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiff is an appropriate representative of the class whose claims she wishes to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed

by the named plaintiff's claims." *Dukes*, 131 S.Ct. at 2550–51 (internal quotation marks and citations omitted). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 2551 (emphasis in original).

### 1. Numerosity

A putative class may be certified if it "is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. (23)(a)(1). Joinder is usually deemed impracticable if a class is "large in numbers." *See Jordan v. City of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (finding class sizes of 39, 64, and 71 sufficiently numerous). Here, Plaintiffs note Defendant's corporate records indicate 536 putative class members in their San Diego office, and over 300 in their Ontario office. (Markham Decl., ¶ 15). Therefore, the requirement of numerosity is met.

### 2. Commonality Under Rule 23(a) and Predominance Under Rule 23(b)(3)

In the interest of efficiency, commonality under Rule 23(a) is considered together with predominance under Rule 23(b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d. 689 (1997) ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.").

Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The putative class members' claims must "depend on a common contention," which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

> "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common

answers." *Id.* (internal citations and quotation marks omitted).

Similarly, the predominance inquiry under Rule 23(b)(3) "focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks, footnote, and citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or after affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations and internal quotation marks omitted). However, "[p]roof of commonality under Rule 23(a) is 'less rigorous' than the related preponderance standard under Rule 23(b)(3)." *Negrete v. ConAgra Foods, Inc.*, 2019 WL 1960276 at *2 (C.D. Cal. 2019) (quoting *Hanon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

"Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hours laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012). Plaintiffs contend this case meets the commonality and predominance requirements because Defendant had common practices leading to Plaintiffs working off-the-clock, and missing requisite meal and rest periods. Because the remaining claims are derivative of these claims, Plaintiffs contend the remaining claims meet these requirements as well. In response, Defendant contends the case lacks commonality because TWC had no common policy or practices mandating unlawful off-the-clock work or missed breaks. To the contrary, Defendant notes all of its policies were lawful. Moreover, Defendant notes the experiences of the named Plaintiffs diverged, evidencing individualized issues of fact and an absence of predominance.

///

*a. Overtime and Off-the-Clock Work*

Plaintiffs contend their off-the-clock claims meet the commonality and predominance requirements because Defendant "[had] a common practice of requiring Plaintiffs and class members to perform off-the-clock work starting and loading software before they were able to clock-in for their shift, and the Plaintiffs and class members suffered the same damage—unpaid wages." (MCC at 18). As Plaintiffs note, "a plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert denied*, 135 S. Ct. 2835 (2015). Here, Plaintiffs note the factual bases for their overtime and off-the-clock claims derive from their shared experiences under TWC's common policies and practices.

In response, Defendant contends Plaintiffs' claims cannot satisfy the commonality and predominance requirements because TWC's policies "expressly prohibit off-the-clock work." (Opp. At 2). Although TWC's policies prohibit off-the-clock work, this Court found Plaintiffs provided evidence of off-the-clock work performed before clocking in when denying Defendant's motion for summary judgment on those claims. (ECF No. 70 at 18–20). Nevertheless, the existence of such evidence does not provide evidence of a common policy or practice. Plaintiffs note TWC's facially valid policy is insufficient to defeat the commonality inquiry, because TWC may nevertheless have a company-wide practice which may "sustain a common question of fact or law that supports commonality for class certification." (MCC at 12–13) (citing *Williams v. Super. Ct.*, 221 Cal. App. 4th 1353, 1365 (2013)). Further, Plaintiffs contend TWC's policy prohibiting off-the-clock work was "illusory" because its inconsistent policies "in fact mandated off-the-clock work." (Reply at 4). Rather than a company-wide practice mandating off-the-clock work, however, the experiences of the named Plaintiffs show differences in circumstances depending on their supervisors. For example, Plaintiff Hueneberg testified one supervisor told her to work off-the-clock loading programs prior to her shift, while another forbade it.

(Hueneberg Dep. 129:14–25; 53:23–55:4). These differences are dispositive when determining whether a plaintiff has an off-the-clock claim because plaintiffs need to prove that their supervisors "stood idly by" despite having knowledge of their off-the-clock work. *See Jimenez*, 765 F.3d at 1165.

Although Plaintiffs point to a series of recent cases granting class certification for off-the-clock claims, (MCC at 14–15), in each of those cases, the off-the-clock and overtime violations resulted from a company-wide policy or practice. *See, e.g., Lao v. H&M Hennes & Mauritz, L.P.*, 2018 WL 3753708 at *1–2 (N.D. Cal. 2018) (granting class certification for off-the-clock claims where plaintiffs challenged a company-wide policy requiring employees to undergo security checks before leaving the store for rest breaks and at the end of their shifts); *Negrete v. ConAgra Foods*, 2019 WL 1960276 at *4 (C.D. Cal. 2019) (granting class certification for off-the-clock claims where Defendant did not compensate Plaintiffs for "time spent donning and doffing protective gear at the beginning and end of their shifts"). Unlike those cases, there is no common policy or practice here.

Plaintiffs contend any individualized differences in supervisors' behaviors do not detract from commonality, but rather indicate a damages issue. (*Id.*). The Court disagrees. Rather than a damages issue, the individualized discretion of supervisors establishes liability for each named plaintiff, as well as all putative class members. Plaintiffs compare their case to *Negrete v. ConAgra Foods*, where the district court found the commonality requirement was met when the defendant had not adopted a corporate policy requiring all employees to be paid for donning and doffing time, even though some employees donned their equipment before arriving to work and doffed it after leaving, finding such "individual issues" would be addressed with respect to damages. 2019 WL 1960276 at *5. Here, however, the "individualized differences" not only go to the issue of damages, but to whether each plaintiff has a claim at all. Some TWC supervisors specifically instructed their employees to clock in before loading programs, while others did not, as reflected in the individual experience of Plaintiff Hueneberg. (*See* Hueneberg Dep. 129:14–25; 53:23–55:4). As such, the Court finds that the off-the-clock subclass's claims do not appear to

"depend upon a common contention . . . of such nature that it is capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551; *See also Ordonez v. Radio Shack*, 2013 WL 210223 at *8 (C.D. Cal. 2013) (denying certification because "[p]laintiff offer[ed] insufficient evidence that any alleged off-the-clock work was due to a standardized employment practice, rather than a product of the vagaires of the store an employee worked in, the time of year, or the manager who was in charge."); *Kilbourne v. Coca-Cola Co*, 2015 WL 5117080 at *10 (S.D. Cal. 2015) (finding plaintiff failed to meet the commonality requirement because "[i]n the absence of proof of a company-wide directive or common policy," determining if supervisors had constructive knowledge of off-the-clock work "would require individual inquiries into the practices of various Distribution Centers"). Therefore, Plaintiffs fail to meet the commonality requirement for their off-the-clock claims.

Plaintiffs also fail to meet Rule 23(b)(3)'s requirement for predominance. Defendant contends "certification must be denied because resolving these claims would require individualized inquiries as to whether each class member worked off-the-clock at all, and if so, whether TWC was (or should have been) aware of the uncompensated work such that TWC could be liable for it." (Opp. At 2). The Court agrees. Looking at the named Plaintiffs alone, their off-the-clock claims do not derive from Defendant's common policy or practice, but rather out of individualized experiences with their supervisors. Plaintiffs' off-the-clock claims depend largely on whether their supervisors instructed them to work off-the-clock, as well as whether their supervisors were aware of Plaintiffs' off-the-clock work. *See Stearns v. Tickemtaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) ("It is clear that considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action."). Each of the four named Plaintiffs had different supervisors, and though the outcomes of their experiences were largely the same, determining whether their claims raised triable issues of fact necessitated in-depth analysis of their individual depositions, including individualized accounts of conversations with their supervisors. At trial, each Plaintiff would need to

testify regarding their experiences with their supervisors. Moreover, each Plaintiff would need to prove TWC had knowledge of the off-the-clock work, necessitating testimony from each of their supervisors. The putative class includes over 800 class members. This class is not "sufficiently cohesive to warrant adjudication by representation." *See Vinole*, 571 F.3d at 944.

   *b. Meal Periods and Rest Break Claims*

Plaintiffs contend Defendant's meal break policy is unlawful, and therefore meets the predominance and commonality requirements. (Reply at 4). However, as this Court noted in its order on summary judgment, Plaintiffs failed to demonstrate Defendant's meal break policy was facially unlawful. (ECF No. 70 at 10).

In the absence of a facially unlawful policy, Plaintiffs nevertheless contend Plaintiffs and class members were subject to TWC's "common policy and/or practice" of not allowing transferring or ending of calls, causing Plaintiffs delayed meal breaks. (MCC at 3). Similarly, Plaintiffs contend TWC's "policies and practices inhibited Plaintiffs and class members from taking their rest breaks," because they "closely monitored call volume and call time" leading to "constant pressure" and a "corporate culture" deterring its employees from taking breaks. (MCC at 3). Thus, Plaintiffs contend all potential class members were "expected to skip their breaks in order to keep working and answering customer calls, in violation of California law." (*Id.*). Nevertheless, this Court did not find evidence of such a practice when deciding Defendant's earlier motion for summary judgment. (ECF No. 70 at 10).

Though some of the named Plaintiffs demonstrated evidence of their meal and rest period claims claims, they fail to demonstrate commonality for such claims. Plaintiffs point to time records to demonstrate commonality for the meal break claims, but such records do not demonstrate *why* any delayed or missed breaks were taken. *See Green v. Fed. Express Corp.*, 2015 WL 3825302, *2 (9th Cir. 2015) (affirming district court's denial of class certification of the plaintiff's meal break class because the plaintiff's "common method of proof, electronic scans of packages during designated meal breaks, does not

11

show that FedEx knew or should have known that its employees were working during their break periods."). Moreover, the case Plaintiffs cite to support using records as a basis to demonstrate commonality involves a defendant with a blanket policy "that does not authorize and permit meal or rest breaks unless customer volume, scheduling and business needs permit, such that employees [are] pressured not to take breaks and are never compensated for missed breaks." *See Brewer v. Gen. Nutrition Corp.*, 2014 WL 5877695 at *6 (N.D. Cal. 2014).

Here, Defendant has a lawful meal and rest break policy. Plaintiffs' only evidence of violations occurred as a result of individualized experiences with long customer escalations, specific instructions from supervisors, and a failure to receive requisite meal premiums. As this Court noted in its decision on Defendant's motion for summary judgment, three of the four named Plaintiffs demonstrated a triable issue of fact regarding their meal break claims because they described instances of delayed breaks in their depositions, stated the reason for delay was due to business, and provided evidence showing their supervisor was aware of the delay. (ECF No. 70 at 10–14). And only one of the named Plaintiffs survived summary judgment on the rest break claim, which similarly hinged on supervisor knowledge. (*Id.* at 15–16). As with their off-the-clock claims, the elements establishing liability are fact-intensive and vary between employees depending on their experiences with their supervisors. Given the large size of the class, and that employees had different supervisors with different experiences, the meal and rest break claims raise individual issues and are not "sufficiently cohesive to warrant adjudication by representation." *See Vinole*, 571 F.3d at 944.

c. *Wage Statements and Waiting Time Penalties*

Finally, Plaintiffs contend "as a direct result of Defendant not including the time required for Plaintiffs and class members to complete pre-shift activities in their hours worked, Defendant knowingly issued inaccurate wage statements to Plaintiffs and class members, in violation of Labor Code section 226(a)." (MCC at 4). Further, Plaintiffs contend Defendant did not timely pay Plaintiffs and class members who left TWC all

12

wages due at termination. (*Id.*). The Wage Statement and Waiting Time Penalties claims derive from the above claims. Because the above claims fail to meet the requirements of commonality and predominance, these claims also fail.

### 3. Typicality and Adequacy

Because the Court finds Plaintiff failed to establish commonality for any of their claims, the requirements of typicality and adequacy need not be addressed. *See Wang*, 709 F.3d at 832 (all requirements of Rule 23(a) and one of the three requirements of Rule 23(b) must be shown).

### *B. Rule 23(b) Requirements*

Certification under Rule 23(b)(3) is proper when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As noted above, Plaintiffs' claims fail to meet the predominance requirement. Therefore, the remaining Rule 23(b) requirements will not be addressed here.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is denied.

**IT IS SO ORDERED.**

Dated: January 3, 2020

Hon. Dana M. Sabraw
United States District Judge